**In Re: Appeal of the CUTLER GROUP, INC. from decision of the Board of Supervisors of East Vincent Township.**

**Appeal of: The Cutler Group, Inc.**

Commonwealth Court of Pennsylvania.

Argued March 1, 2005.
Decided July 8, 2005.
Reargument Denied Aug. 31, 2005.

---

41

Richard P. McBride, Horsham, for appellant.

William J. Brennan, King of Prussia, for appellee, East Vincent Township.

Robert J. Sugarman, Philadelphia, for appellee, Elaine Milito.

BEFORE: FRIEDMAN, J., COHN JUBELIRER, J., and JIULIANTE, Senior Judge.

OPINION BY Judge FRIEDMAN.

The Cutler Group, Inc. (Cutler) appeals from the July 9, 2004, order of the Chester County Court of Common Pleas (trial court), affirming the decision of the Board of Supervisors of East Vincent Township (Board), which denied Cutler's application for a conditional use to develop its property using the Open Space Design Option under Article IX of the East Vincent Township (Township) Zoning Ordinance (Ordinance). We affirm in part and reverse in part.

Cutler owns a 154.62–acre tract of land in the Township. A large portion of the tract is zoned Agricultural Preservation (AP); a smaller portion is zoned Rural Conservation (RC). Both the AP and RC zoning districts allow development by con-ditional use under Article IX of the Ordinance. Cutler submitted a conditional use application to the Board on December 12, 2002, proposing to build seventy-two single family detached dwellings on its land using the Open Space Design Option in Article IX of the Ordinance. (Board's Findings of Fact, Nos. 3–5, 7–8.)

After conducting public hearings on the matter, the Board denied Cutler's conditional use application because: (1) the development would severely exacerbate an already dangerous traffic condition; (2) Cutler failed to demonstrate a safe on-site water supply; (3) the proposed development does not support the preservation of agricultural uses; (4) Cutler failed to establish an adequate stormwater recharge system; (5) Cutler failed to delineate all wetlands; and (6) there was inconclusive evidence of a bog turtle habitat. (Board's op. at 18–23.) Cutler appealed to the trial court, which affirmed. Cutler now appeals to this court.[1]

A conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board. *Bailey v. Upper Southampton Township*, 690 A.2d 1324 (Pa.Cmwlth. 1997). The fact that a use is permitted as a conditional use evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the community. *Northampton Area School District v. East Allen Township Board of Supervisors*, 824 A.2d 372 (Pa.Cmwlth.), *appeal denied*, 575 Pa. 689, 834 A.2d 1144 (2003); *Bailey; In re Saunders*, 161 Pa.Cmwlth. 392, 636 A.2d 1308 (1994), *appeal denied*, 540 Pa. 625,

---

1. Our scope of review where the trial court takes no additional evidence is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *Bailey v. Upper Southampton Township,* 690 A.2d 1324 (Pa.Cmwlth.1997).

657 A.2d 494 (1995); Robert S. Ryan, 1 Pennsylvania Zoning Law and Practice 5.2.6 (2003) (hereinafter Ryan).

 Thus, a conditional use must be granted unless the protestants present sufficient evidence to establish that there is a high degree of probability that the use will cause substantial threat to the community.[2] Ryan, § 5.2.5, § 5.2.6. The evidence of the protestants cannot consist of mere bald assertions or personal opinions and perceptions of the effect of the use on the community. *Id.; Visionquest National, Ltd. v. Board of Supervisors,* 524 Pa. 107, 569 A.2d 915 (1990). Moreover, the degree of harm required to justify denial of the conditional use must be greater than that which normally flows from the proposed use. Ryan, § 5.2.6.

## I. Already Dangerous Traffic Condition

 Cutler argues that the Board erred in denying its conditional use application on grounds that the development would severely exacerbate an already dangerous traffic condition. We agree.

 Under section 1900(F)(10) of the Ordinance, the location of proposed use must be "suitable with respect to probable effects upon highway traffic." However, the location cannot be deemed unsuitable simply because the proposed use would contribute to an already dangerous traffic

condition which is primarily generated by other sources. *Manor Healthcare Corporation v. Lower Moreland Township Zoning Hearing Board,* 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991); *Appeal of Martin,* 108 Pa.Cmwlth. 107, 529 A.2d 582 (1987).

Here, the Board found that: (1) County Bridge No. 191, a one-lane bridge, is located less than one-half mile south of the proposed development; (2) the approach to the bridge from the proposed development includes a ninety-degree turn; (3) the bridge and its approaches constitute an existing dangerous traffic condition; (4) the proposed development would increase traffic over the bridge by 80%, adding 252 trips to the 315 trips that vehicles currently make daily over the bridge; and (5) this increase in traffic would exacerbate the already dangerous traffic condition. (Board's Findings of Fact, Nos. 57, 59, 61; Board's op. at 18–19.)

Under *Manor Healthcare* and *Martin,* the Board could not deny Cutler's conditional use application simply because the proposed use would contribute to the already dangerous traffic condition because the dangerous condition is caused primarily by the ninety-degree approach to the one-lane bridge. Thus, we conclude that the Board erred in denying Cutler's conditional use because of its effect on traffic at the bridge.[3]

2. Initially, the applicant for a conditional use has the duty to present evidence and the burden of persuading the governing body that the proposed use satisfies the objective requirements of the ordinance. *Manor Healthcare Corporation v. Lower Moreland Township Zoning Hearing Board,* 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991). Once the applicant meets these burdens, the burden normally shifts to the protestants to present evidence and to persuade the governing body that the proposed use will have a generally detrimental effect on health, safety and welfare or will conflict with the expressions of general policy

contained in the ordinance. *Id.* With respect to the detrimental effect of a use on health, safety and welfare, an ordinance may place the burden of persuasion on the applicant; however, an ordinance may not place the burden of production on the applicant. *Id.*

3. We also note that a conditional use may not be denied for traffic reasons unless: (1) there is a high probability that the proposed use will generate traffic at the location that is not normally generated by the type of use; and (2) the abnormal traffic increase threatens safety. *Bailey.* However, this rule does not

## II. Water Supply

■ Cutler next argues that the Board erred in denying its conditional use application on grounds that Cutler failed to demonstrate a safe *on-site* water supply, e.g., a community well. Cutler contends that the Board's rejection of its plan to use *off-site public water* is contrary to section 901(B) of the Ordinance. We agree.

Section 400(C) of the Ordinance states that one purpose of the AP district provisions is to accommodate residential development "at densities which will assure a healthful water supply from *on-lot wells* . . . ." (Emphasis added.) Section 500(B) of the Ordinance states that one purpose of the RC district provisions is to "assure a healthful water supply from *on-lot wells* . . . ." (Emphasis added.) However, sections 401(C)(1), 501(C) and 901(A)(2) of the Ordinance permit, as a conditional use, development in the AP and RC zoning districts in accordance with the Open Space Design Option set forth in Article IX. Section 901(B) of the Ordinance, which is within Article IX, states:

> Development under the open space design option shall be served by individual, community, *or public water supply systems* . . . where the applicant can demonstrate, to the satisfaction of the Board of Supervisors, adequate supply for the intended residential and open space uses.

(S.R.R. at 6b) (emphasis added).

In interpreting the language of zoning ordinances to determine the extent of a restriction upon the use of property, the language shall be interpreted, where doubt exists as to the intended meaning, in favor of the property owner and against any implied extension of the restriction. Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC).[4] Here, sections 400(C) and 500(B) of the Ordinance appear to totally prohibit the use of public water in the AG and RC districts. However, sections 401(C)(1), 501(C) and 901(A)(2) of the Ordinance permit development under the Open Space Design Option, which allows the use of public water. Because this creates some doubt as to the intended meaning of the Ordinance, we interpret the Ordinance in favor of Cutler and against the implicit prohibition on the use of public water in the AG and RC districts when using the Open Space Design Option.

In this case, the Pennsylvania American Water Company provided a letter to Cutler evidencing its willingness to provide public water service to the proposed use by the extension of existing service lines within the public rights-of-way without the need for off-site easements. (Board's Findings of Fact, No. 13.) Thus, we conclude that the Board erred in denying Cutler's application for a conditional use on grounds that Cutler failed to demonstrate an adequate water supply.

## III. Preservation of Agricultural Uses

■ Cutler next argues that the Board erred in denying its conditional use application on grounds that the proposed development does not support the preservation of agricultural uses. In denying Cutler's application on these grounds, the Board relied on provisions of the MPC and provisions of the Ordinance governing the AP and RC districts. (Board's op. at 21–23.) Cutler contends that, inasmuch as the Ordinance permits the Open Space Design Option as a conditional use in the AG and RC districts, the Board may consider only

---

apply here because the abnormal traffic condition at the bridge already threatens safety.

4. Act of July 31, 1968, P.L. 805, *added by* the Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 10603.1.

whether Cutler met the criteria for a conditional use. We agree. However, in this regard, the Board *did* consider sections 1900(F)(3) and 1900(F)(5) of the Ordinance, which set forth criteria for a conditional use. (Board's op. at 22.)

## A. Section 1900(F)(3)

■ Section 1900(F)(3) of the Ordinance states that the size, scope, extent and character of a conditional use must be consistent with the spirit, purposes and intent of the Township's Comprehensive Plan. The Board found that Cutler's proposed development was not consistent with the spirit, purposes and intent of the Comprehensive Plan because Cutler's proposed development does not support the preservation of agricultural uses. (Board's Findings of Fact, No. 24; Board's op. at 22.) However, as a matter of law, where a zoning ordinance allows a conditional use, there is legislative acceptance that the use is consistent with the zoning plan. *Northampton Area School District; Saunders; Ryan*, § 5.1.5.

Here, the Township's Ordinance allows development under the Open Space Design Option as a conditional use in the AG and RC districts. The Open Space Design Option requires preservation of 65% of a property's open space, *not* preservation of 100% of the open space. *See* section 903(A) of the Ordinance. Thus, there is legislative acceptance that preservation of 65% of a property's open space in the AG and RC districts is consistent with the spirit, purposes and intent of the Township's Comprehensive Plan. Because Cutler proposes preservation of 65% of its property's open space, the Board erred in

denying Cutler's application for a conditional use based on inconsistency with the Comprehensive Plan.

## B. Section 1900(F)(5)

■ Section 1900(F)(5) of the Ordinance requires a determination that the proposed use will not injure the use of the surrounding properties. In this regard, the Board relied on the testimony of Protestants and found that numerous large farms in the area depend for their viability on "the contiguous and extensive nature of stretch of or cluster of large farms." (Board's Findings of Fact, No. 27; Board's op. at 22.) However, Protestants cannot establish a substantial threat from a conditional use by presenting evidence that consists of mere bald assertions or personal opinions. *Visionquest;* Ryan, § 5.2.5.

Here, there is little, if any, evidence that Cutler's proposed use will adversely affect the viability of the surrounding large farms. One Protestant, representing the French and Pickering Creek Conservation Trust, testified that, "if farming is to survive, farms cannot be separated from each other and isolated and surrounded by housing developments." (R.R., Vol. II, at 1006a; 8/7/03 hearing, N.T. at 88–89.) However, this protestant offered no valid explanation for his bald assertion, and we have found no other evidence explaining *why* the survival of large farms in the area requires that Cutler preserve its farm land for agricultural uses.[5] Thus, we conclude that the Board erred in denying Cutler's conditional use application for failure to comply with section 1900(F)(5).

## IV. Stormwater Management

■ Cutler next argues that the Board erred in denying its conditional use appli-

---

5. In their briefs, the Township and Protestants refer this court to various pages of the reproduced record for evidence that Culter's proposed use will adversely affect the viability of the surrounding large farms. (Township's brief at 20; Protestants' brief at 23.) However, we have examined those pages and have found testimony that amounts to conjecture but no evidence to support the Board's finding.

cation on grounds that Cutler failed to establish an adequate stormwater recharge system under section 905(A)(1)(b)(3)(a) of the Ordinance. Cutler asserts that, under section 905(A)(1)(b)(3)(a), Cutler was required to establish only that the three proposed stormwater retention basins are "designed to . . . promote recharge of the groundwater system." Cutler maintains that the testimony is overwhelming that the retention basins are designed to promote recharge of the groundwater system, and there is no credible evidence to the contrary. (Cutler's brief at 19–20.) We disagree.

 Determinations as to the credibility of witnesses and the weight to be given evidence are matters left solely to the Board in the performance of its fact-finding role. *Amerikohl Mining, Inc. v. Zoning Hearing Board,* 142 Pa.Cmwlth. 249, 597 A.2d 219 (1991), *appeal denied,* 529 Pa. 652, 602 A.2d 861 (1992).

Here, in support of the recharge capabilities of the three proposed stormwater retention basins, Cutler presented a "Conceptual Stormwater Recharge Evaluation" by Horizon Engineering Associates, LLC (Horizon). The evaluation contains results of soil testing done by DelVal Soil & Environmental Consultants, Inc. Based on the results, which show the hydraulic conductivity rates of the soil in the areas of the three proposed stormwater recharge basins, Horizon concluded that the basins can be designed in a manner that promotes meaningful groundwater recharge. (*See* R.R., Vol. III, at 1343a–45a; ex. A–27.)

In rejecting Horizon's conclusion, the Board relied on the testimony of Wesley R. Horner, an expert in environmental planning. (Board's Findings of Fact, Nos. 19–20.) Horner reviewed the "Conceptual Stormwater Recharge Evaluation" and testified as follows:

A couple of the testing results show what we would consider to be reasonable permeability for some sort of an infiltration system or recharge system. . . . [However,] [t]here were two sampling tests done—4 and 5, I believe. 4 was inadequate at less than a quarter of an inch an hour, I believe, and a few feet away, there was [sic] 75 inches per hour. It was bizarre. It makes absolutely no sense. Obviously, that's not a natural condition. There's a problem with that test and 75 inches per hour is simply absurd.

(R.R., Vol. II, at 887a; 7/9/03 hearing, N.T. at 88.) Horner opined that, in his expert opinion, it will be difficult for Cutler to achieve the Township's stormwater requirements by means of the three proposed stormwater retention basins. (R.R., Vol. II, at 876a; 7/9/03 hearing, N.T. at 75.)

Because determinations as to the credibility of witnesses and the weight to be given evidence are the sole province of the Board, we conclude that the Board did not err in denying Cutler's conditional use application on grounds that Cutler failed to establish that the three proposed stormwater retention basins are designed to promote recharge of the groundwater system.

### V. Wetlands Delineation

 Cutler next argues that the Board erred in denying its conditional use application on grounds that Cutler failed to delineate all wetlands. Cutler contends that it presented conclusive evidence of the location of wetlands on its property in the form of a United States Army Corps of Engineers' jurisdictional determination confirming the accuracy of the wetlands delineation on Cutler's development plan. We disagree.

Cutler submitted the U.S. Army Corps of Engineers' jurisdictional determination

as to the wetlands on Cutler's property. (Board's Findings of Fact, No. 44.) Nevertheless, the Board found that Cutler failed to delineate all wetlands because the Township's expert testified that he observed additional wetlands on the property. (Board's Findings of Fact, Nos. 42, 46.) In this regard, the Township's expert explained that the jurisdiction of the U.S. Army Corps of Engineers is limited to wetlands that are adjacent to U.S. waters, and some of the wetlands he observed were isolated wetlands, i.e., those not adjacent to U.S. waters.[6] (R.R., Vol. I, at 519a; 5/14/03 hearing, N.T. at 139.) In light of such testimony, we conclude that the Board did not err in denying Cutler's conditional use application for failure to delineate all wetlands.

### VI. Bog Turtle Habitat

██ Finally, Cutler argues that the Board erred in denying its conditional use application based on inconclusive evidence of a bog turtle habitat. However, it does not appear to us from the Board's decision that the Board denied Cutler's conditional use application on this basis. The Board states only that it cannot reach a definite conclusion as to the existence of bog turtle habitats on Cutler's property. (*See* Board's Findings of Fact, No. 54; Board's op. at 23.)

Nevertheless, the Township and Protestants argue in their briefs that Cutler failed to comply with section 1900(E)(4) of the Ordinance. Section 1900(E)(4) requires that a conditional use applicant prove that the proposed use will comply with *applicable* federal regulations, and the Township and Protestants contend that federal regulations protecting the bog turtle as an endangered species are applicable in this case. However, we reiterate that the Board was unable to conclude from the evidence that there was a bog turtle habitat on Cutler's property. Absent evidence establishing the existence of a bog turtle habitat on Cutler's property, federal regulations protecting bog turtles are *not applicable*.[7] Thus, to the extent that the Board may have denied Cutler's conditional use application based on inconclusive evidence of a bog turtle habitat, we hold that the Board erred in doing so.

Accordingly, we reverse to the extent that the order denies Cutler's conditional use application on grounds that the proposed use: (1) would severely exacerbate an already dangerous traffic condition; (2) does not have a safe on-site water supply; (3) does not support the preservation of agricultural uses; and (4) does not comply with applicable federal regulations protecting bog turtle habitats. In all other respects, we affirm.[8]

### *ORDER*

AND NOW, this 8th day of July, 2005, the July 9, 2004, order of the Chester

---

6. The Township's expert testified that the Pennsylvania Department of Environmental Protection regulates *all* wetlands, whether or not they are adjacent to U.S. waters. (R.R., Vol. I, at 519a; 5/14/03 hearing, N.T. at 139.)

7. If the Board had found that there *is* a bog turtle habitat on Cutler's property, then it would have been necessary for Cutler to prove its compliance with federal regulations protecting the bog turtle.

8. We note that the Township and Protestants raise other issues in their briefs that might support the denial of Cutler's conditional use application. However, because the Board did not address any of those issues in denying Cutler's application, we decline to address them. *See* section 913.2(b)(1) of the MPC, *added by* the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10913.2(b)(1) (stating that a governing body's decision denying a conditional use must contain the reasons for the denial).

County Court of Common Pleas is hereby reversed to the extent that it denies the conditional use application of The Cutler Group, Inc. on grounds that the proposed use: would severely exacerbate an already dangerous traffic condition; does not have a safe on-site water supply; does not support the preservation of agricultural uses; and does not comply with applicable federal regulations protecting bog turtle habitats. The order is affirmed in all other respects.