OPINION BY
SENIOR JUDGE LEADBETTER
The Borough of Jefferson Hills appeals from an order of the Court of Common Pleas of Allegheny County (common pleas) reversing the decision of the Borough Council of the Borough of Jefferson Hills (Council) to deny the conditional use application of EQT Production Company and ET Blue Grass Clearing, LLC (the Applicants) to construct, operate, and maintain a natural gas production facility on an area of their property known as the Bickerton Well Site. In support of its denial of the application, Council primarily cited the Applicants’ alleged failure to satisfy Section 1003(a) of the Zoning Ordinance of the Borough of Jefferson Hills (Zoning Ordinance), which provides: “The use shall not endanger the public health, safety or *557 welfare nor deteriorate the environment, as a result of being located on the property where it is proposed.” Section 1003(a) of the Zoning Ordinance; Reproduced Record (R.R.) at 1068a. On review, we conclude that Council erred in concluding that the burden never shifted to the objectors to establish with probative evidence that there is a high degree of probability that the conditional use will constitute a detriment to the public health, saféty, and welfare exceeding that ordinarily to be expected from the proposed use. In addition, we conclude that the objectors’ evidence does not constitute the requisite substantial evidence to thwart the Applicants’ entitlement to a conditional use ás a matter of right. Accordingly, we affirm.[1]
Located off Ridge Road in Jefferson Hills, PA, the subject property consists of Allegheny County Department of Real Estate Block and Lot Nos. 1003-H-395-0-2 and 1003-M-250 and is situated in both the B-P Business Park Zoning District (B-P District) and OG-U Oil and Gas Unconventional Development Overlay District-Unconventional Wells (Overlay District). December 23, 2015, Decision of Council, Finding of Fact (F.F.) Nos. A.1 and B.l. In the B-P District, oil and gas drilling is permitted as a conditional use. Unconventional gas wells are permitted as a conditional use in the B-P District as part of the Overlay District. Id., F.F. No. B.2.
In .September 2015, the Applicants filed their application for conditional use approval for a proposed unconventional gas well site on the “Bickerton Well Site.” “The proposed well site is approximately 126 acres and will include unconventional wells both at the vertical and horizontal laterals and be hydraulically fractured.” Id., F.F. No. C.l. The Applicants own both the surface and the oil and gas rights. They have leases for all of the horizontal laterals underground currently permitted and are working on acquiring leases for the non-permitted wells. Id., F.F. No. C.4.
Regarding some of the specifics of their proposed use, the Applicants stated that they would not use borough roads during well-site construction and would use .only state-owned roads. Id., F.F. No. C.6. Further, they testified that water truck traffic to the proposed well site would be alleviated because ■ the Pennsylvania American Water Company had approved a meter vault for the site. Id., F.F. No. C.2. In addition, they stated that the proposed project would not impact streams.or wetlands and that all of the lighting requirements set forth in the Zoning Ordinance were met. Id., F.F. Nos. C.8 and C.9. They further indicated that they would not be seeking any compressor station sites within the Borough, that natural gas would flow from the proposed well, site to a compressor station in a neighboring community, and that they would explore the possibility of odorizing that gas for leak-detection purposes and report back to the Borough. Id., F.F. Nos. C.13-15. In addition, even absent a requirement, they also agreed to a sound testing program and to use sound walls if required ás part *558 of a conditional use approval. Id., F.F. Nos. C.18 and C.24. Further, acknowledging that safety issues similar to any other industrial facility could occur at the site, i.e., minor injuries, illnesses, and fires, they testified that the group putting together the safety and environmental plan for the well locations consisted of two people. Id., F.F. Nos. C.16 and C.17. As for air quality, they presented no evidence as to any monitoring plans but indicated that any complaints would go to Allegheny County as the agency tasked with enforcing those issues. Id., F.F. Nos. C.18 and C.19. Regarding traffic, the Applicants indicated that they would post roads that were not to receive truck traffic and place speed limit signs along the truck routes. Id., F.F. No. C.20.
In October 2015, the Planning Commission unanimously recommended approval of the application, conditioned upon the Applicants providing updated information before the public hearing on the conditional use in order to show compliance with numerous deficiencies outlined in the borough planning consultant’s review letter. Id., F.F. No. A.3. In December 2015, the Council denied the Applicants’ conditional use application by a zero to five vote. Council’s written decision followed.
In its decision, Council determined that the Applicants complied with all of the general requirements for conditional uses found in Section 1003 of the Zoning Ordinance except subsection (a), pertaining to the public health, safety, and welfare, and the environment. That subsection provides that, “The use shall not endanger the public health, safety or welfare nor deteriorate the environment, as a result of being located on the property where it is proposed.”
In addition, Council concluded that the Applicants satisfied Section 1004.35 of the Zoning Ordinance, providing additional standards for the specific conditional use of oil and gas drilling. Further, it determined that they met Sections 1503 and 1504 of Ordinance No. 833,[2] pertaining to “oil and gas overlay districts oil and gas development application requirements” and “oil and gas development standards.” Id., Conclusion of Law No. F. Based on its determination that they failed to satisfy Section 1003(a), however, Council concluded that “the burden never shifted to the objectors to prove that the impact of the proposed use is such that it would violate the other general requirements for land use set forth in the Borough Zoning Ordinance.” Id., Conclusion of Law No. H. Nonetheless, Council found the objectors’ testimony to be credible and persuasive such that it gave significant weight to their testimony.[3] Id., Conclusion of Law No. B.
Moreover, in addition to its analysis under the applicable conditional use criteria, *559 Council considered the Environmental Rights Amendment (ERA)[4] in rendering its decision. Citing the objectors’ testimony-in support, Council concluded, in relevant part, as follows:
FF. Borough Council, not wishing to permit the infringement of its residents’ rights under the [ERA], based upon the above-referenced lack of evidence from Applicants on protecting the public health, safety, welfare and environment and the testimony of various persons regarding the deleterious effects of the proposed use, is unwilling to permit the proposed conditional use due to its tendency of likely causing environmental degradation, diminution and depletion and public health issues such as adversely affected air and water quality and the potential for cancer.
GG. Applicants’ succinct statement that it would comply with [Section 1003(a) of the Zoning Ordinance] without providing evidence of accomplishing the same, combined with the evidence presented by those testifying in opposition ... does not satisfy the Borough’s obligations under Article I of the Pennsylvania Constitution to approve the proposed conditional use application.
[[Image here]]
II. Applicants’ consistent aversion to continuous air quality monitoring places ... Council in the position of being unable in advance of proceeding to adequately consider the environmental effect of the proposed conditional use application.
[[Image here]]
KK. Borough Council’s balancing of the present desire for gas development against the right of its residents to a healthy environment result in more weight being given to environmental concerns.
[[Image here]]
MM. Borough Council posits that in approving the proposed conditional use application it would neither be promoting the public health, safety and welfare, nor protecting the environment from deterioration, when there is an acknowledged risk that the activity the proposed conditional use allows undermines each of these values.
Id., Conclusion of Law Nos. FF., GG., II., KK., and MM (emphasis added).
Common pleas reversed without taking additional evidence and without addressing the ERA, concluding that Council erred in determining that (1) the Applicants did not meet their burden of proving entitlement to a conditional use; and that (2) the burden never shifted to the objectors to present substantial evidence of any adverse impact on the public health, safety, and welfare. Regarding the nature of the objectors’ evidence, the court characterized it as speculative regarding general oil and gas development and theoretical regarding air pollution and odors. June 21, 2016, Opinion of Common Pleas at 4. In support of its determination, the court cited Gorsline v. Board of Supervisors of Fairfield Township, 123 A.3d 1142 (Pa. Cmwlth. 2015), appeal granted, 139 A.3d, 178 (Pa. 2016).[5] In Gorsline, mindful of the board of *560 supervisors’ conclusion that the neighbors’ “speculation of possible harms” was insufficient to demonstrate that the proposed natural gas well would be detrimental to the health, safety, and welfare of the neighborhood, we concluded that there was no probative evidence offered to show that the proposed well would present such a detriment. Id. at 1153-54. The Borough’s appeal to this Court followed.
It is well established that, “[a] conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board.” Williams Holding Group, LLC v. Bd. of Supervisors of West Hanover Twp., 101 A.3d 1202, 1212 (Pa. Cmwlth. 2014) [quoting In re Thompson, 896 A2d 659, 670 (Pa. Cmwlth. 2006)]. A conditional use, like a special exception, is not an exception to a municipality’s zoning ordinance, but rather a use to which an applicant is entitled as a matter of right unless the municipal legislative body determines “that the use does not satisfy the specific, objective criteria in the zoning ordinance for that conditional use.” In re Drumore Crossings, L.P., 984 A.2d 589, 595 (Pa. Cmwlth. 2009). It is the applicant’s burden to establish that the proposed use satisfies the specific criteria in the particular zoning ordinance.[6] Williams, 101 A.3d at 1212. “An applicant who satisfies this prima facie burden is entitled to approval, unless objectors in the proceeding offer credible and. sufficient evidence that the proposed use would have a detrimental impact on public health, safety, and welfare.” Id.
Additionally, the ordinance must require that an applicant meet reasonably definite conditions and not something in the nature of a policy statement.[7] Id. In that regard, the various burdens can be summarized as follows:
[A]s to specific requirements of the zoning ordinance, the applicant has the persuasion burden, as well as the initial evidence presentation burden. The objectors have the initial evidence presentation duty toith respect to the general matter of detriment to health, safety and general welfare, even if the ordinance has expressly placed the persuasion burden upon the applicant, where it remains if detriment is identified .... Where the ordinance attempts to place upon the applicant a burden of proof even more vague in its nature, we have refused to give it effect.
Id. at 1213 (emphasis added) [quoting Bray v. Zoning Bd. of Adjustment, 48 Pa.Cmwlth. 523, 410 A.2d 909, 912 (1980)]. As we summarized in Williams:
Thus, if a requirement is interpreted as one upon which the burden is placed on an applicant, but the requirement is nonobjective or too vague to afford the applicant knowledge of the means by which to comply, the requirement is either one that is not enforceable ..., or, if it relates to public detriment, the burden shifts to an objector, who must dem *561 onstrate- that the applicant’s proposed use would constitute such a - detriment.
101 A.3d at 1213.
In any case, it is well established that, “[t]he fact that a use is permitted as a conditional use evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the community.” In re Cutler Group, Inc., 880 A.2d 39, 42 (Pa. Cmwlth. 2005) (citations omitted). In other words, once an applicant establishes compliance with the specific requirements of the ordinance, the proposed use enjoys a presumption that it is consistent with municipal planning objectives and with the public health, safety, and welfare. Sheetz, Inc. v. Phoenixville Borough Council, 804 A.2d 113, 115 (Pa. Cmwlth. 2002). Therefore, “the degree of harm required to justify denial of the conditional use must be greater than that which normally flows from the proposed use.” Cutler, 880 A.2d at 43. This is so because the governing body in enacting the ordinance presumptively took into account the impact of the use and considered it not to be a threat to health, safety or welfare. Id. Opponents, therefore, must prove a high degree of probability that permitting the conditional use will cause a substantial threat to the community. Id. In that regard, the burden falls on them to establish with specificity and with more than mere speculative anecdotal testimony that the specific proposal will impose detrimental impacts exceeding those ordinarily to be expected from the use at issue. See Kretschmann Farm, LLC v. Twp. of New Sewickley, 131 A.3d 1044, 1055 (Pa. Cmwlth.), appeal denied, 145 A.3d 168 (Pa. 2016) (holding that objectors’ concerns did not constitute probative evi•dence that the applicant’s compressor station would adversely affect the public health, safety and welfare in a way not expected for a usual compressor station); Cutler, 880 A.2d at 43 (holding that, “[t]he evidence of the protestants cannot consist of mere bald assertions or personal opinions and perceptions of the effect of the use on the community.”)
Accordingly here, once the Applicants satisfied the specific, objective criteria for the conditional use, the burden shifted to the objectors. See Williams, 101 A.3d at 1213. Therefore, we must consider whether objectors’ testimony constitutes substantial evidence of a high degree of probability that Applicants’ proposal will impose detrimental impacts exceeding those ordinarily to be expected from unconventional gas wells. Kretschmann Farm, 131 A.3d at 1055; Cutler, 880 A.2d at 43.
Eight objectors credibly testified at the public, hearing in opposition to the conditional use application.[8] Four witnesses testified as to issues relating to EQT’s Trax Farm well site located in a nearby municipality (Misters Domman, Baum-gartner, Gniadek, and Tullai). Mr. Dom-man commented on the gag agreements that EQT offered residents near the Trax Farm well site whereby residents would grant an easement over and above their properties for noise, dust, light, smoke, odors, fumes, soot or other air pollution, vibrations, and other adverse impacts, conditions or nuisances which could arise from EQT’s operations. He also discussed freshwater impoundments and the water testing required at that site. In addition, based on Google Earth, Mr. Domman testified as to the proximity of neighbor *562 hoods to the proposed Bickerton Well Site and how many of them would be located within the half mile safety radius that the Applicants had discussed. He also commented on the evacuation in Greene County that had occurred due to an explosion and its effect on those residents. December 23, 2015, Decision of Council, F.F. No. 22(b).
Mr. Baumgartner testified as to his proximity to the Trax Farm well site and commented on negative impacts there, such as noise, vibrations, and odors. Stating that Southwestern Regional Health Association had advised him as to the presence of airborne particulate matter restricting outdoor activities, he alleged that air quality levels and diesel odors had required him and his wife to evacuate their home several times and had forced his pregnant daughter to move out on her doctor’s advice. In addition, he stated that he had a respiratory illness requiring hospitalization due to the issues at the well site. Finally, alleging that he and his wife were going to sell their house, he encouraged Council to investigate EQT’s fines and violations. Id., F.F. No. 22(c).
Mr. Gniadek, a water truck driver who had worked in the oil and gas industry, testified as to an incident near the Trax Farm well site where he witnessed a malodorous, thick, white cloud which caused him to fall ill, return to his house, and call an EQT contact. Gniadek relayed that the contact indicated that there had been no other complaints and laughed at him. Thereafter, Gniadek stated that he had red dots over his entire body and later was told that they were indicative of asphyxiation. He also stated that EQT offered him $50,000 as part of an offer that was being made to everyone on his street that they all had to accept, which was later changed to permit each neighbor to decide individually. Finally, like Mr. Baumgartner, he testified that, after noise complaints, EQT would change its operations during an investigation period. Id., F.F. No. 22(d).
Mr. Tullai, who had recently moved to Jefferson Hills from near the Trax Farm well site, testified as to issues that had occurred at the Trax Farm site such as sleep-disrupting noise and annoying diesel fumes. He recommended freshwater im-poundment testing to ensure that hydraulic fracturing water is left in the impound-ments. Id., F.F. No. 22(e).
Ms. Caulkett testified that she lives approximately one thousand feet from the proposed Bickerton Well Site and expressed concerns about noise, smell, and the effect of the vibrations on underground mines. She was concerned about mine subsidence and whether the drilling would exceed the two parcels at issue. Id., F.F. No. 22(f). Raising the possibility of the drilling going underneath her house, she asked whether EQT would enter into a deal and reimburse her for that portion of the gas. November 10, 2015, Hearing, Notes of Testimony (N.T.) at 188-190; R.R. at 663-665a.
Ms. Morgan discussed the hearing notice and opined that there should have been better notice to the residents. She also asked questions as to the mechanics of how Council would proceed, what it would consider, and whether there would be additional hearings. She noted that many of her questions had been answered during the presentation and comment period. Id. at 200; R.R. at 675a.
Ms. Marcucci, who resides in Pleasant Hills, PA, but not in the Borough, is employed as a community outreach coordinator for the Environmental Integrity Project. She testified that EQT was fined as a result of her employer’s research project on one of EQT’s sites in Tioga County due to switching permanent freshwater im-poundments into flowback ponds. In addi *563 tion, she opined that the Applicants’ practice of having only two persons applying for all of their permits could result in details being missed. She also discussed air quality permitting practices that the natural gas industry uses to avoid tighter regulation and noted EQT’s flaring practices and their effect on the sound coming from a well site into the community. December 23, 2015, Decision of Council, F.F. No. 22(a).
Ms. Kaufmann, a borough resident and family nurse practitioner with a doctorate in public health,[9] testified as to the health risks involved in hydraulic fracturing and referenced some of the studies with which she was familiar such as a recent one from the Johns Hopkins School of Public Health regarding fracking and pregnancy. She also discussed a recent consensus statement from the American Academy of Pediatrics and the fact that the state of New York banned hydraulic fracturing based on certain research. In addition, she testified as to the changes that she has seen in health conditions in Cecil Township such as an increase in bad rashes, asthma exac-erbations, unexplained coughs, and nose bleeds. November 10, 2015, Hearing, N.T. at 209; R.R. at 684a. Finally, she encouraged Council to consider the knowledge of health risks and the potential cancer lag time between exposure and presentation before moving forward with a decision on the Bickerton Well Site. December 23, 2015, Decision of Council, F.F. No. 22(h).
Having carefully reviewed the objectors’ testimony, we conclude that it is insufficient to meet their burden of proof. Without a doubt, they testified about serious problems at other well sites or the harms posed by drilling and operation of unconventional wells generally. While such testimony might persuade legislators to prohibit such drilling, it does not satisfy their burden to show that the development of the Bickerton Well Site would have an impact on public health, safety, and welfare beyond that normally associated with any other unconventional well site. Besides asking some questions, they failed to present either lay or expert testimony specific to the Bickerton Well Site proposal. As common pleas noted, their testimony was the kind of speculative evidence[10] insufficient to constitute proof of detriment to health, safety, and welfare exceeding those ordinarily to be expected from the proposed use. See Kretschmcmn Farm, 131 A.3d at 1055. Accordingly, given the fact that there has been a legislative decision that the particular use is presumptively consistent with the health, safety, and welfare of the community, the objectors’ testimony is insufficient to satisfy their burden, and it is not the role of the Council in adjudicating a conditional use application, let alone for the courts, to second guess the legislative decision underlying the ordinance.
Finally, Council’s decision to augment the conditional use requirements with criteria based on the ERA is tantamount to an attempt to, sub silentio, abrogate the legislative determination that a conditional use for oil and gas drilling is consistent *564 with municipal planning objectives and with the public health, safety and welfare, including protection of the environment.[11] Therefore, once the Applicants met the specific requirements of the ordinance, their proposed use enjoyed a presumptive consistency with that legislative determination. See Sheetz, 804 A.2d at 115.
Accordingly we affirm the decision of common pleas which reversed the Council’s denial of the conditional use application. Nonetheless, because of Council’s outright denial, it did not consider attaching reasonable conditions to Applicants’ project, to some of which Applicants had expressed their amenability, such as water testing and noise reduction. Given the environmental sensitivity of unconventional gas well drilling, we believe it is appropriate that we remand so that reasonable conditions may be considered and, if found to be necessary, attached to the grant of this conditional use. This consideration may be accomplished by common pleas on remand,[12] or that court may remand further for consideration by Borough Council.
ORDER
AND NOW, this 18th day of May, 2017, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED. However, the matter is remanded to the Court of Common Pleas, in accordance with the foregoing opinion, for consideration of whether the conditional use application should be subject to reasonable conditions and, if so, imposing such conditions. Jurisdiction relinquished.

. Where, as here, common pleas did not take additional evidence, we are limited to reviewing whether the local governing body committed an error of law or made findings which are not supported by substantial evidence. Whitehall Manor, Inc. v. Planning Comm'n of the City of Allentown, 79 A.3d 720, 724 (Pa. Cmwlth. 2013); Geryville Materials, Inc. v. Planning Comm’n of Lower Milford Twp., Lehigh Cnty., 74 A.3d 322, 325 (Pa. Cmwlth. 2013), appeal denied, 624 Pa. 699, 87, A.3d 817 (2014). Substantial evidence is defined as such relevant evidence as a reasonable mind might find adequate to support a conclusion. Valley View Civic Ass'n v. Zoning Bd. of Adjustment, 501 Pa. 550, 462 A.2d 637, 640 (1983).

. In June 2014, the Borough enacted Ordinance No. 833, which specifically provides for the zoning of oil and gas drilling operations. In so doing, the Borough found as follows:
[T]he proposed new provisions ... will promote the public health, safety and welfare and practical community development in the Borough ... and will provide for gas and oil drilling to take place in areas of the Borough in locations which will allow extraction of gas and oil with the least detrimental impact on residentially zoned property, historic or recreational resources, hospitals, nursing homes, daycare centers and schools. As such, the proposed provisions will further the goals of the Comprehensive Plan to preserve the single family character of the Borough, to manage and promote future growth and to protect natural sites.
Section 1(1)(A) of Ordinance No. 833; R.R. at 1144a.

. As the fact finder, it is within the province of the municipal legislative body to render credibility determinations and to assign weight to the evidence. Joseph v. N. Whitehall Twp. Bd. of Supervisors, 16 A.3d 1209, 1218 (Pa. Cmwlth. 2011).

. The ERA provides:
The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania’s public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all people.
PA. CONST. art. I, § 27, els. 1-3.

. The Supreme Court’s grant review for consideration of four issues primarily relates to this Court’s holdings regarding an industrial shale gas development being similar to and *560 compatible with a public service facility in an R-A District.

. What the applicant must establish to obtain conditional use approval depends on what the specific ordinance requires. See Elizabethtown/Mt. Joy Associates, L.P. v. Mount Joy Twp. Zoning Healing Bd., 934 A.2d 759, 764 (Pa. Cmwlth. 2007).

. As we stated in Bray v. Zoning Board of Adjustment, 48 Pa.Cmwlth. 523, 410 A.2d 909, 911 (1980): "Any other view would enable the [board] to assume the legislative role
[[Image here]]

. See November 10, 2015, Hearing, Notes of Testimony (N.T.) at 129-217; R.R. at 604-692a.

. There is no indication from the hearing transcript that Ms. Kaufmann was qualified as an expert.

. The Borough has raised a concern that the testimony of lay witnesses based on their own personal experiences will never be sufficient to constitute the requisite probative evidence to establish that a conditional use poses a detriment to public health, safety, and welfare. We do not in any way suggest that the testimony of lay witnesses is insufficient, per se, but instead, that probative evidence may not consist of speculation or testimony, even if concrete, which relates generally to potential harmful effects of the use permitted by the ordinance.

. See note 2 at 5, supra, quoting Section 1(1)(A) of Ordinance 833. No argument is being made here that the conditional use allowance of unconventional gas wells, which is specifically authorized by Pennsylvania statute, violates the ERA.

. Section 1006-A of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 11006— A. Section 1006-A was added by the Act of December 21, 1988, P.L. 1329.