# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis C. Sluciak, : 
                Appellant : 
        : 
        : 
       v. : 
        : 
Cecil Township Board of Supervisors : 
        : 
       v. : 
        : 
Crown Castle Towers 09 LLC : 
        : 
       v. : No. 139 C.D. 2019
        : Argued: October 4, 2019
Hidden Acres East Apartment : 
Community : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT           FILED: December 13, 2019

      Dennis C. Sluciak (Objector) appeals an order of the Court of Common Pleas of Washington County (trial court) that affirmed the decision of the Cecil Township Board of Supervisors (Supervisors) to grant Crown Castle Towers 09, LLC (Crown Castle) a conditional use permit to construct a communication tower. Objector contends that the trial court erred in rejecting his land use appeal of the conditional use permit granted to Crown Castle. He asserts that the Supervisors made erroneous evidentiary rulings and misapplied the applicable ordinance. Discerning no merit to these claims, we affirm.

## Background

      Crown Castle seeks to build a communication tower on a property owned by Hidden Acres East Apartment Community (Hidden Acres), which is

located in Cecil Township's (Township) C-1 General Commercial Zoning District. The tower will replace and relocate an existing communication tower from one location on the Hidden Acres property, where it has been since 1999, to another location closer to Objector's property. On December 13, 2017, Crown Castle submitted a conditional use application to the Township, which described the proposed tower as follows:

> Telecommunications facility consisting of proposed 195' self support [tower] with 4' lightning rod within a new 90 x 90 fenced compound within a 100 x 100 lease area in addition to a proposed 1,576 L.F. 12' wide non-exclusive access drive.

Reproduced Record at 153a (R.R.__).

Section 1212(A) of the Township Unified Development Ordinance (Ordinance)[1] permits "communications facilities, including towers and antenna additions to existing structures," in the C-1 Zoning District as a conditional use. ORDINANCE, §1212(A). After the Township Planning Commission recommended approval of Crown Castle's development plan, the Supervisors held a public hearing on the conditional use application, at which Crown Castle presented witnesses and documentary evidence.

Objector, owner of an adjacent 34-acre property, opposed the communication tower, which he believed was being moved to reduce the "negative impact" on the Hidden Acres apartment complex at the expense of adjacent property owners. Notes of Testimony, 3/12/2018, at 92 (N.T.__); R.R. 112a. The tower will be built immediately adjacent to the most valuable and developable part of Objector's land, which is elevated and offers scenic views. Objector submitted

---

[1] CECIL TOWNSHIP UNIFIED DEVELOPMENT ORDINANCE, No. 5-00, May 17, 2000, *as amended* (Ordinance).

pictures and Google Earth images of Crown Castle's existing tower and the approximate location of the proposed tower. He also submitted a joint letter of other residents, complaining that the new tower will "overshadow[] and negatively impact[] 70+ acres of undeveloped property and 7 residential properties." R.R. 364a. At present Objector uses his property for a construction business, but he believes "there is a future" in another "best use development." N.T. 98-99; R.R. 118a-19a.

Objector referred the Supervisors to Crown Castle's 2014 application for a conditional use permit and a variance to construct a communication tower. Objector explained that the evidence on that application was "discussed and brought in front of a judge in Washington County" and related to "this same cell tower." N.T. 86-87; R.R. 106a-07a. The trial court in that case reversed the variance that had been granted on Crown Castle's application. Crown Castle objected to the relevancy of the 2014 application and decision thereon because it involved a variance from the setback requirements. Under the current Ordinance, a setback variance is not needed. The Supervisors sustained Crown Castle's objection.

The Supervisors advised Objector that the instant proceeding was the "time and place" for him to present evidence of "adverse impacts of this particular cell tower." N.T. 92; R.R. 112a. Objector replied, "that's what I am doing. I am presenting that as evidence that relocating that cell tower from its present location to the new location is lessening [Hidden Acres'] negative impact." *Id*.

On May 7, 2018, the Supervisors granted Crown Castle a conditional use permit for its new communication tower, subject to strict compliance with the 199-foot "setback from the edge of the [c]ommunication [f]acility pad to the property lines." Supervisors' Decision at 29. The Supervisors found that Crown Castle satisfied the specific requirements for a communication tower as set forth in

3

Section 1212 of the Ordinance. The burden then shifted to Objector to show that the impact of the proposed tower "will be greater than would normally be expected" and will "pose a substantial threat to the health, safety and welfare of the community." Supervisors' Decision at 22 (quoting *Szewczyk v. Zoning Board of Adjustment*, 654 A.2d 218, 224 (Pa. Cmwlth. 1995)). The Supervisors held that Objector did not satisfy this burden; instead, objector focused upon Crown Castle's "motives" for relocating the existing tower. *Id*.

Objector appealed to the trial court and argued, *inter alia*, that the Supervisors erred in refusing to take "judicial notice" of the record from Crown Castle's 2014 application for a conditional use permit and a variance. He also argued that the Supervisors abused their discretion by approving the conditional use without specifying the exact location for the communication tower. Objector did not challenge the Supervisors' holding that Crown Castle satisfied the specific standards in the Ordinance for a communication tower.

**Trial Court Decision**

The trial court affirmed the Supervisors without taking additional evidence. The trial court held that the Supervisors should have taken "judicial notice" of the trial court's earlier decision that sustained Objector's appeal of the setback variance granted by the Township's Zoning Hearing Board. Trial Court op. at 3 n.2. However, the trial court went on to explain that judicial notice did not include "the entire record of testimony over the objection of a party." *Id.* at 7. Indeed, the trial court observed that it would have been "reversible error" for the Supervisors to incorporate the entire file of "unrelated litigation" and use prior factual findings in a subsequent matter. *Id*. The trial court held that neither its

4

decision on the 2014 application nor the record of testimony from that proceeding could be used to sustain Objector's evidentiary burden in this case.

The trial court further held that the Supervisors did not err by granting Crown Castle's conditional use application without specifying the precise location for the communication tower. It was sufficient that the Supervisors required that the facility pad be placed at least 199 feet from the property line. Objector appealed to this Court.[2]

**Appeal**

On appeal, Objector raises six issues for our consideration, which we have combined and reordered for clarity. First, he argues that the trial court erred by holding that the Supervisors did not have to take judicial notice of Crown Castle's 2014 application and the record thereon. Second, he argues that the Supervisors abused their discretion by not admitting the record of the 2014 application because it established the adverse impact of the proposed tower. Finally, he argues that the trial court erred by affirming the Supervisors' approval of the conditional use without specifying the precise location for the communication tower. Objector asks this Court to remand the matter with the direction that the Supervisors "take judicial notice of the record of the 2014 [c]ase and hear additional testimony from [Objector's] expert witness landscape architect." Objector Brief at 24. We address these issues *seriatim*.

_____

[2] Generally, where the trial court takes no additional evidence, this Court's review determines whether the board of supervisors abused its discretion or committed an error of law in granting the conditional use application. *In re AMA/American Marketing Association, Inc.*, 142 A.3d 923, 930 n.5 (Pa. Cmwlth. 2016). The board abuses its discretion if its findings are not supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Joseph v. North Whitehall Township Board of Supervisors*, 16 A.3d 1209, 1215 n.3 (Pa. Cmwlth. 2011).

5

## Analysis

A conditional use is defined as "[a] use permitted in a particular zoning district pursuant to the provisions in Article VI" of the Municipalities Planning Code (MPC).[3]  Section 107(a) of the MPC, 53 P.S. §10107(a).  A governing body has authority to grant a conditional use "pursuant to express standards and criteria set forth in the zoning ordinance."  Section 603(c)(2) of the MPC, 53 P.S. §10603(c)(2).  A conditional use concerns only a proposed use of land, not particular design details of the proposed development.  *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006).  A conditional use proceeding follows the procedures applied in a special exception proceeding.  *In re Cutler Group, Inc.*, 880 A.2d 39, 42 (Pa. Cmwlth. 2005).  Specifically, the applicant for a conditional use makes a *prima facie* case by proving compliance with the specific, objective criteria of the applicable zoning ordinance.  *Id*.  The burden then shifts to the objector to present sufficient evidence that "there is a high degree of probability that the use will cause [a] substantial threat to the community."  *Id.* at 43.  A conditional use evidences a legislative determination that such use will not have an adverse impact on the public interest in normal circumstances.  *Id*. at 42.  The objector must present probative evidence that a proposed use will have an adverse impact that is greater than that which normally flows from the conditional use.  *Id.* at 43.  This evidentiary burden may not be satisfied with personal opinion or bald assertions.  *Id*.

In the case *sub judice*, the Supervisors held, and the trial court affirmed, that Crown Castle satisfied the specific conditional use requirements for a communication tower set forth in Section 1212 of the Ordinance and, thus, made its *prima facie* case.  Objector does not challenge that holding.  Rather, he argues that

---

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

the Supervisors should have taken judicial notice of the record from Crown Castle's 2014 application for a conditional use permit and a variance and, by failing to do so, precluded him from establishing the tower's detrimental impact on public health, safety, and welfare.

Judicial notice is addressed in Pennsylvania Rule of Evidence 201.[4] Objector argues that judicial notice may be taken "at any stage of the proceeding of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Objector Brief at 21. Objector maintains that the 2014 proceeding is a matter of public record maintained by the Township and the trial court. Notably, Objector did not introduce the record from Crown Castle's 2014 application as evidence before the Supervisors; rather, he asked the Supervisors to look into "the old record just for reference sake." N.T. 88; R.R. 108a.

Judicial notice is intended, *inter alia*, "to avoid the necessity of formally introducing evidence in those limited circumstances where the fact sought to be proved is so well known in the jurisdiction that evidence in support thereof is unnecessary." *Wells v. Pittsburgh Board of Public Education*, 374 A.2d 1009, 1011 (Pa. Cmwlth. 1977). The scope of judicial notice does not extend to the evidentiary

---

[4] Pennsylvania Rule of Evidence 201 states in pertinent part:

> (b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it:
>> (1) is generally known within the trial court's territorial jurisdiction; or
>> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
> (c) Taking Notice. The court:
>> (1) may take judicial notice on its own; or
>> (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.

PA. R.E. 201(b), (c).

7

record of another case, even though the case arose in the same court and even though the parties to the respective actions are the same. *Commonwealth ex rel. Ferguson v. Ball*, 121 A. 191, 192 (Pa. 1923); *Acorn Club of Swissvale, Inc. v. Pennsylvania Liquor Control Board*, 500 A.2d 1296, 1297 (Pa. Cmwlth. 1985). Rather, judicial notice of other proceedings is limited to the pleadings and judgments that involve the same parties. *Lycoming County v. Pennsylvania Labor Relations Board*, 943 A.2d 333, 335 n.8 (Pa. Cmwlth. 2007).

The trial court's prior decision reversed the setback variance granted to Crown Castle for the stated reason that it did not show hardship. However, in 2016, amendments to the Ordinance revised the setback requirements for a communication tower. Technically, Objector invoked "official notice," not "judicial notice," because the Supervisors acted as officials, not judges. However, the principles are the same. We explained in *Ramos v. Pennsylvania Board of Probation and Parole*, 954 A.2d 107, 109 (Pa. Cmwlth. 2008), that official notice "authorizes the finder of fact to waive proof of facts that cannot seriously be contested."[5] Here, the trial court held that the Supervisors should have taken official notice of its order on the 2014 variance because it was a matter of public record. However, official notice was not

---

[5] We further explained, in *Ramos*, that:

> *"Official notice" is the administrative counterpart of judicial notice and is the most significant exception to the exclusiveness of the record principle.* The doctrine allows an agency to take official notice of facts which are obvious and notorious to an expert in the agency's field and those facts contained in reports and records in the agency's files, in addition to those facts which are obvious and notorious to the average person. Thus, official notice is a broader doctrine than is judicial notice and recognizes the special competence of the administrative agency in its particular field and also recognizes that the agency is the storehouse of information on that field consisting of reports, case files, statistics and other data relevant to its work.

*Ramos*, 954 A.2d at 110 (quoting *Falasco v. Pennsylvania Board of Probation and Parole*, 521 A.2d 991, 995 n.6 (Pa. Cmwlth. 1987)) (emphasis added; internal citations omitted).

the vehicle to establish the central fact at contest here, *i.e.*, whether the proposed tower will bring about a harm not contemplated when the legislative decision was made to permit communication towers in the C-1 Zoning District subject to a setback requirement equal to the height of the tower. In short, the Supervisors' official notice of the trial court's 2014 decision has limited, if any, meaning.

Objector next argues that the Supervisors erred in excluding the record from Crown Castle's 2014 application for a conditional use permit and a variance, which presented "identical circumstances" and, therefore, is relevant to Objector's challenge to the new tower. Objector Brief at 18. He contends that the Supervisors violated Section 908(6) of the MPC[6] by excluding relevant evidence. Objector further contends that the trial court "misapprehended" his intended use of the 2014 record, which was not "offered to make [his] entire case" but, rather, to demonstrate that there were "no changed circumstances relative to the identical facts" upon which Crown Castle's previous application was denied. *Id.* at 19. The 2014 application involved the same parties, which had an opportunity to cross-examine witnesses presented at the hearings before the Supervisors and the Zoning Hearing Board. The Supervisors and Crown Castle counter that the record from the 2014 application was

---

[6] The MPC provides guidance on the use of evidence in a hearing on a land use application. Section 908(6) of the MPC states as follows:

> The board shall conduct hearings and make decisions in accordance with the following requirements:
>
> ***
>
> (6) Formal rules of evidence shall not apply, but irrelevant, immaterial, or unduly repetitious evidence may be excluded.

53 P.S. §10908(6). "Evidence is relevant if it logically tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Joseph v. North Whitehall Township Board of Supervisors*, 16 A.3d 1209, 1218-19 (Pa. Cmwlth. 2011) (quoting *Commonwealth v. Laich*, 777 A.2d 1057, 1061 (Pa. 2001)).

irrelevant because a variance application involves a legal inquiry quite different from that in a conditional use application.

Although Objector argues that Crown Castle's 2014 application presented "identical circumstances," this cannot be ascertained from the certified record, which does not contain the record from the 2014 proceeding. Objector requested the Supervisors to "look into" that prior record but did not offer it into evidence. Notably, the trial court held that it would have been error to admit the record to prove disputed facts in the instant matter. We agree.

Objector had the opportunity to present evidence relevant to the question of whether Crown Castle's proposed communication tower would bring about a harm not contemplated by the drafters of the Ordinance when they made the legislative decision to permit that use in the C-1 Zoning District. The Supervisors advised Objector, repeatedly, that if he intended to offer evidence of "adverse impacts of this particular cell tower, this is the time and place [] to do that." N.T. 92; R.R. 112a. Objector replied that he was presenting evidence to show that "relocating that cell tower from its present location to the new location is lessening [Hidden Acres'] negative impact." *Id*. That evidence consisted of a joint letter from neighbors and photographs. This did not suffice. We reject Objector's second issue.

Finally, Objector argues that the trial court erred by granting the conditional use permit without specifying the precise location of the communication tower. The Supervisors counter that Crown Castle must comply with all of the requirements set forth in Part 5 of the Ordinance to obtain land development plan approval, which will require Crown Castle to specify the new location of the tower. ORDINANCE, §§501-506.

10

Crown Castle points out that there was a question about whether the setback of 199 feet was to be measured from the outermost edge of the pad for the tower or the leg of the tower. Crown Castle's conditional use application measured 199 feet from the leg. The Supervisors decided, however, that the measurement had to be taken from the pad, and the permit was granted with the condition that Crown Castle satisfy the 199-foot "setback from the edge of the [c]ommunication [f]acility pad to the property lines." Supervisors' Decision at 29. It is not accurate, as Objector argues, that the tower's location is unknown.

Section 403(F) of the Ordinance provides the following standards for the grant of a conditional use permit:

> The Board of Supervisors shall review the particular facts and circumstances of each proposed Conditional Use in terms of the following standards, as well as more specific development criteria listed in the district proposed for location of each use, *and shall find adequate evidence showing that such use at the proposed location*:
>
> 1. Is in fact listed as a Conditional Use within the specific zoning district involved;
>
> 2. Will be harmonious with and in accordance with the general objectives or with any specific objective of the Township's Comprehensive Plan and this Chapter;
>
> 3. Will be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and will not change the essential character of the same area;
>
> 4. Will not be hazardous or disturbing to existing neighboring uses;

11

5. Will be served adequately by essential facilities and services such as highways, streets, police and fire protection, drainage structures, refuse disposal, water and sewer, and schools; or the persons or agencies responsible for the establishment of the proposed use shall be able to adequately provide any such services;

6. Will not create excessive additional requirements at public expense for public facilities and services and will not be detrimental to the economic welfare of the community;

7. Will not involve uses, activities, processes, materials, equipment, and conditions of operation that will be detrimental to any persons, property, or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare, or odors;

8. Will have vehicular approaches to the property which shall be designed so as not to create interference with traffic on surrounding public thoroughfares;

9. Will not result in the destruction, loss, or damage of a natural, scenic, or historic feature of significant importance.

ORDINANCE, §403(F). (emphasis added). Objector maintains that the phrase "adequate evidence showing that such use *at the proposed location*" supports his proposition that the Board cannot approve a conditional use where a specific location is not precisely identified. Section 403(F) and Section 1212 of Ordinance,[7] which

_____

[7] Section 1212 of the Ordinance states, in pertinent part, as follows:

A. Proposed communication facilities, including towers and antenna additions to existing structures, shall be located only in the R-1, C-1, I-1, I-2, and SD zoning districts. Proposed new communications towers must gain approval by Conditional Use from the Board of Supervisors of Cecil Township. As part of the Conditional

12

provide the specific standards for a communication facility, do not contain such a requirement. Section 504 of the Ordinance, which governs subdivision and land development, requires that preliminary and final land development applications specify the proposed location of the facility. ORDINANCE, §504. Section 504, however, is irrelevant to a conditional use application. A conditional use proceeding concerns only a proposed *use* of land, not particular design details of the proposed development. *In re Thompson*, 896 A.2d at 670.

We discern no merit to Objector's third assignment of error.

## Conclusion

Objector did not move the evidentiary record from Crown Castle's 2014 application into evidence at the conditional use hearing before the Supervisors. Its contents are unknown. Instead, Objector asked the Supervisors to take judicial notice (or official notice) of that record. The Supervisors did not err by refusing to do so. We also conclude that the Supervisors did not err by granting Crown Castle's conditional use application without specifying the precise location for the cell tower.

---

Use application, the applicant shall provide notification by Certified Mail of the intent to seek such approval. This notification shall be provided to all property owners within three hundred (300) feet of the property lines of the parcel on which the facility is to be located….

B. Any applicant proposing a new communication tower shall demonstrate that efforts have been made to obtain permission to mount an antenna or antennae on an existing building, public utility transmission structure, or communication tower rather than erect a separate tower. The applicant shall contact, by Certified mail, all owners of potentially suitable structures within a one-quarter-mile radius of the proposed site.

ORDINANCE, §1212(A) and (B). Subsections (C) through (R) set forth a number of safety and technical requirements, including licensing by the Federal Communications Commission, approval of the Federal Aviation Administration and satisfaction of Federal and State emissions standards for non-iodizing electromagnetic radiation, and all must be satisfied by a communication tower. Objector does not challenge the Supervisors' conclusion that Crown Castle satisfied each requirement.

13

It was sufficient that the Supervisors required that the facility pad be at least 199 feet off Objector's property line in compliance with the setback requirements in Section 1212 of the Ordinance. For these reasons, we affirm the trial court's December 17, 2018, order.

_____
MARY HANNAH LEAVITT, President Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dennis C. Sluciak, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Cecil Township Board of Supervisors | : | |
| | : | |
| v. | : | |
| | : | |
| Crown Castle Towers 09 LLC | : | |
| | : | |
| v. | : No. 139 C.D. 2019 | |
| | : | |
| Hidden Acres East Apartment | : | |
| Community | : | |

# **O R D E R**

AND NOW, this 13th day of December, 2019, the order of the Court of Common Pleas of Washington County, dated December 17, 2018, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge