# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

EQT Production Company and    :
ET Blue Grass Clearing, LLC    :
       :
      v.        :    No. 1184 C.D. 2016
       :    ARGUED: November 14, 2016
       :
Borough of Jefferson Hills,    :
         Appellant    :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**          **FILED: May 18, 2017**


      The Borough of Jefferson Hills appeals from an order of the Court of Common Pleas of Allegheny County (common pleas) reversing the decision of the Borough Council of the Borough of Jefferson Hills (Council) to deny the conditional use application of EQT Production Company and ET Blue Grass Clearing, LLC (the Applicants) to construct, operate, and maintain a natural gas production facility on an area of their property known as the Bickerton Well Site. In support of its denial of the application, Council primarily cited the Applicants' alleged failure to satisfy Section 1003(a) of the Zoning Ordinance of the Borough of Jefferson Hills (Zoning Ordinance), which provides: "The use shall not endanger the public health, safety or welfare nor deteriorate the environment, as a result of being located on the property where it is proposed." Section 1003(a) of the Zoning Ordinance; Reproduced Record (R.R.) at 1068a. On review, we conclude that Council erred in concluding that the burden never shifted to the

objectors to establish with probative evidence that there is a high degree of probability that the conditional use will constitute a detriment to the public health, safety, and welfare exceeding that ordinarily to be expected from the proposed use. In addition, we conclude that the objectors' evidence does not constitute the requisite substantial evidence to thwart the Applicants' entitlement to a conditional use as a matter of right. Accordingly, we affirm.[1]

Located off Ridge Road in Jefferson Hills, PA, the subject property consists of Allegheny County Department of Real Estate Block and Lot Nos. 1003-H-395-0-2 and 1003-M-250 and is situated in both the B-P Business Park Zoning District (B-P District) and OG-U Oil and Gas Unconventional Development Overlay District-Unconventional Wells (Overlay District). December 23, 2015, Decision of Council, Finding of Fact (F.F.) Nos. A.1 and B.1. In the B-P District, oil and gas drilling is permitted as a conditional use. Unconventional gas wells are permitted as a conditional use in the B-P District as part of the Overlay District. *Id.*, F.F. No. B.2.

In September 2015, the Applicants filed their application for conditional use approval for a proposed unconventional gas well site on the "Bickerton Well Site." "The proposed well site is approximately 126 acres and will include unconventional wells both at the vertical and horizontal laterals and be

---

[1] Where, as here, common pleas did not take additional evidence, we are limited to reviewing whether the local governing body committed an error of law or made findings which are not supported by substantial evidence. *Whitehall Manor, Inc. v. Planning Comm'n of the City of Allentown*, 79 A.3d 720, 724 (Pa. Cmwlth. 2013); *Gerryville Materials, Inc. v. Planning Comm'n of Lower Milford Twp., Lehigh Cnty.*, 74 A.3d 322, 325 (Pa. Cmwlth. 2013), *appeal denied*, 87 A.3d 817 (Pa. 2014). Substantial evidence is defined as such relevant evidence as a reasonable mind might find adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

hydraulically fractured." *Id*., F.F. No. C.1. The Applicants own both the surface and the oil and gas rights. They have leases for all of the horizontal laterals underground currently permitted and are working on acquiring leases for the non-permitted wells. *Id*., F.F. No. C.4.

Regarding some of the specifics of their proposed use, the Applicants stated that they would not use borough roads during well-site construction and would use only state-owned roads. *Id*., F.F. No. C.6. Further, they testified that water truck traffic to the proposed well site would be alleviated because the Pennsylvania American Water Company had approved a meter vault for the site. *Id*., F.F. No. C.2. In addition, they stated that the proposed project would not impact streams or wetlands and that all of the lighting requirements set forth in the Zoning Ordinance were met. *Id*., F.F. Nos. C.8 and C.9. They further indicated that they would not be seeking any compressor station sites within the Borough, that natural gas would flow from the proposed well site to a compressor station in a neighboring community, and that they would explore the possibility of odorizing that gas for leak-detection purposes and report back to the Borough. *Id*., F.F. Nos. C.13-15. In addition, even absent a requirement, they also agreed to a sound testing program and to use sound walls if required as part of a conditional use approval. *Id*., F.F. Nos. C.18 and C.24. Further, acknowledging that safety issues similar to any other industrial facility could occur at the site, i.e., minor injuries, illnesses, and fires, they testified that the group putting together the safety and environmental plan for the well locations consisted of two people. *Id*., F.F. Nos. C.16 and C.17. As for air quality, they presented no evidence as to any monitoring plans but indicated that any complaints would go to Allegheny County as the agency tasked with enforcing those issues. *Id*., F.F. Nos. C.18 and C.19.

3

Regarding traffic, the Applicants indicated that they would post roads that were not to receive truck traffic and place speed limit signs along the truck routes. *Id.*, F.F. No. C.20.

In October 2015, the Planning Commission unanimously recommended approval of the application, conditioned upon the Applicants providing updated information before the public hearing on the conditional use in order to show compliance with numerous deficiencies outlined in the borough planning consultant's review letter. *Id.*, F.F. No. A.3. In December 2015, the Council denied the Applicants' conditional use application by a zero to five vote. Council's written decision followed.

In its decision, Council determined that the Applicants complied with all of the general requirements for conditional uses found in Section 1003 of the Zoning Ordinance *except* subsection (a), pertaining to the public health, safety, and welfare, and the environment. That subsection provides that, "The use shall not endanger the public health, safety or welfare nor deteriorate the environment, as a result of being located on the property where it is proposed."

In addition, Council concluded that the Applicants satisfied Section 1004.35 of the Zoning Ordinance, providing additional standards for the specific conditional use of oil and gas drilling. Further, it determined that they met Sections 1503 and 1504 of Ordinance No. 833,[2] pertaining to "oil and gas overlay

---

[2] In June 2014, the Borough enacted Ordinance No. 833, which specifically provides for the zoning of oil and gas drilling operations. In so doing, the Borough found as follows:

> [T]he proposed new provisions . . . will promote the public health, safety and welfare and practical community development in the Borough . . . and will provide for gas and oil drilling to take place in areas of the Borough in locations which will allow extraction of gas and oil with the least detrimental impact on residentially zoned

**(Footnote continued on next page…)**

districts oil and gas development application requirements" and "oil and gas development standards." *Id*., Conclusion of Law No. F. Based on its determination that they failed to satisfy Section 1003(a), however, Council concluded that "the burden never shifted to the objectors to prove that the impact of the proposed use is such that it would violate the other general requirements for land use set forth in the Borough Zoning Ordinance." *Id*., Conclusion of Law No. H. Nonetheless, Council found the objectors' testimony to be credible and persuasive such that it gave significant weight to their testimony.[3] *Id*., Conclusion of Law No. B.

Moreover, in addition to its analysis under the applicable conditional use criteria, Council considered the Environmental Rights Amendment (ERA)[4] in rendering its decision. Citing the objectors' testimony in support, Council concluded, in relevant part, as follows:

_____

**(continued…)**

> property, historic or recreational resources, hospitals, nursing homes, daycare centers and schools. As such, the proposed provisions will further the goals of the Comprehensive Plan to preserve the single family character of the Borough, to manage and promote future growth and to protect natural sites.

Section 1(1)(A) of Ordinance No. 833; R.R. at 1144a.

[3] As the fact finder, it is within the province of the municipal legislative body to render credibility determinations and to assign weight to the evidence. *Joseph v. N. Whitehall Twp. Bd. of Supervisors*, 16 A.3d 1209, 1218 (Pa. Cmwlth. 2011).

[4] The ERA provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all people.

PA. CONST. art. I, § 27, cls. 1-3.

5

FF. Borough Council, not wishing to permit the infringement of its residents' rights under the [ERA], based upon the above-referenced lack of evidence from Applicants on protecting the public health, safety, welfare and environment and *the testimony of various persons regarding the deleterious effects of the proposed use*, is unwilling to permit the proposed conditional use due to its tendency of likely causing environmental degradation, diminution and depletion and public health issues such as adversely affected air and water quality and the potential for cancer.

GG. Applicants' succinct statement that it would comply with [Section 1003(a) of the Zoning Ordinance] without providing evidence of accomplishing the same, *combined with the evidence presented by those testifying in opposition . . .* does not satisfy the Borough's obligations under Article I of the Pennsylvania Constitution to approve the proposed conditional use application.

. . .

II. Applicants' consistent aversion to continuous air quality monitoring places . . . Council in the position of being unable in advance of proceeding to adequately consider the environmental effect of the proposed conditional use application.

. . .

KK. Borough Council's balancing of the present desire for gas development against the right of its residents to a healthy environment result in more weight being given to environmental concerns.

. . .

MM. Borough Council posits that in approving the proposed conditional use application it would neither be promoting the public health, safety and welfare, nor protecting the environment from deterioration, when there is an acknowledged risk that the activity the proposed conditional use allows undermines each of these values.

*Id.*, Conclusion of Law Nos. FF., GG., II., KK., and MM (emphasis added).

6

Common pleas reversed without taking additional evidence and without addressing the ERA, concluding that Council erred in determining that (1) the Applicants did not meet their burden of proving entitlement to a conditional use; and that (2) the burden never shifted to the objectors to present substantial evidence of any adverse impact on the public health, safety, and welfare. Regarding the nature of the objectors' evidence, the court characterized it as speculative regarding general oil and gas development and theoretical regarding air pollution and odors. June 21, 2016, Opinion of Common Pleas at 4. In support of its determination, the court cited *Gorsline v. Board of Supervisors of Fairfield Township*, 123 A.3d 1142 (Pa. Cmwlth. 2015), *appeal granted*, 139 A.3d 178 (Pa. 2016).[5] In *Gorsline*, mindful of the board of supervisors' conclusion that the neighbors' "speculation of possible harms" was insufficient to demonstrate that the proposed natural gas well would be detrimental to the health, safety, and welfare of the neighborhood, we concluded that there was no probative evidence offered to show that the proposed well would present such a detriment. *Id*. at 1153-54. The Borough's appeal to this Court followed.

It is well established that, "[a] conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal legislative body rather than the zoning hearing board." *Williams Holding Group, LLC v. Bd. of Supervisors of West Hanover Twp.*, 101 A.3d 1202, 1212 (Pa. Cmwlth. 2014) [quoting *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006)]. A conditional use, like a special exception, is not an exception to a municipality's zoning

---

[5] The Supreme Court's grant review for consideration of four issues primarily relates to this Court's holdings regarding an industrial shale gas development being similar to and compatible with a public service facility in an R-A District.

7

ordinance, but rather a use to which an applicant is entitled as a matter of right unless the municipal legislative body determines "that the use does not satisfy the specific, objective criteria in the zoning ordinance for that conditional use." *In re Drumore Crossings, L.P.*, 984 A.2d 589, 595 (Pa. Cmwlth. 2009). It is the applicant's burden to establish that the proposed use satisfies the specific criteria in the particular zoning ordinance.[6] *Williams*, 101 A.3d at 1212. "An applicant who satisfies this prima facie burden is entitled to approval, unless objectors in the proceeding offer credible and sufficient evidence that the proposed use would have a detrimental impact on public health, safety, and welfare." *Id*.

Additionally, the ordinance must require that an applicant meet reasonably definite conditions and not something in the nature of a policy statement.[7] *Id*. In that regard, the various burdens can be summarized as follows:

> [A]s to specific requirements of the zoning ordinance, the applicant has the persuasion burden, as well as the initial evidence presentation burden. *The objectors have the initial evidence presentation duty with respect to the general matter of detriment to health, safety and general welfare, even if the ordinance has expressly placed the persuasion burden upon the applicant, where it remains if detriment is identified . . . .* Where the ordinance attempts to place upon the applicant a burden of proof even more vague in its nature, we have refused to give it effect.

*Id*. at 1213 (emphasis added) [quoting *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909, 912 (Pa. Cmwlth. 1980)]. As we summarized in *Williams*:

---

[6] What the applicant must establish to obtain conditional use approval depends on what the specific ordinance requires. *See Elizabethtown/Mt. Joy Associates, L.P. v. Mount Joy Twp. Zoning Hearing Bd.*, 934 A.2d 759, 764 (Pa. Cmwlth. 2007).

[7] As we stated in *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 911 (Pa. Cmwlth. 1980): "Any other view would enable the [board] to assume the legislative role . . . ."

> Thus, if a requirement is interpreted as one upon which the burden is placed on an applicant, but the requirement is nonobjective or too vague to afford the applicant knowledge of the means by which to comply, the requirement is either one that is not enforceable . . . , or, if it relates to public detriment, the burden shifts to an objector, who must demonstrate that the applicant's proposed use would constitute such a detriment.

101 A.3d at 1213.

In any case, it is well established that, "[t]he fact that a use is permitted as a conditional use evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the community." *In re Cutler Group, Inc.*, 880 A.2d 39, 42 (Pa. Cmwlth. 2005) (citations omitted). In other words, once an applicant establishes compliance with the specific requirements of the ordinance, the proposed use enjoys a presumption that it is consistent with municipal planning objectives and with the public health, safety, and welfare. *Sheetz, Inc. v. Phoenixville Borough Council*, 804 A.2d 113, 115 (Pa. Cmwlth. 2002). Therefore, "the degree of harm required to justify denial of the conditional use must be greater than that which normally flows from the proposed use." *Cutler*, 880 A.2d at 43. This is so because the governing body in enacting the ordinance presumptively took into account the impact of the use and considered it not to be a threat to health, safety or welfare. *Id.* Opponents, therefore, must prove a high degree of probability that permitting the conditional use will cause a substantial threat to the community. *Id.* In that regard, the burden falls on them to establish with specificity and with more than mere speculative anecdotal testimony that the specific proposal will impose detrimental impacts exceeding those ordinarily to be expected from the use at issue. *See Kretschmann Farm, LLC v. Twp. of New Sewickley*, 131 A.3d 1044, 1055 (Pa. Cmwlth.), *appeal denied*, 145 A.3d 168 (Pa.

9

2016) (holding that objectors' concerns did not constitute probative evidence that the applicant's compressor station would adversely affect the public health, safety and welfare in a way not expected for a usual compressor station); *Cutler*, 880 A.2d at 43 (holding that, "[t]he evidence of the protestants cannot consist of mere bald assertions or personal opinions and perceptions of the effect of the use on the community.")

Accordingly here, once the Applicants satisfied the specific, objective criteria for the conditional use, the burden shifted to the objectors. *See Williams*, 101 A.3d at 1213. Therefore, we must consider whether objectors' testimony constitutes substantial evidence of a high degree of probability that Applicants' proposal will impose detrimental impacts exceeding those ordinarily to be expected from unconventional gas wells. *Kretschmann Farm*, 131 A.3d at 1055; *Cutler*, 880 A.2d at 43.

Eight objectors credibly testified at the public hearing in opposition to the conditional use application.[8] Four witnesses testified as to issues relating to EQT's Trax Farm well site located in a nearby municipality (Misters Domman, Baumgartner, Gniadek, and Tullai). Mr. Domman commented on the gag agreements that EQT offered residents near the Trax Farm well site whereby residents would grant an easement over and above their properties for noise, dust, light, smoke, odors, fumes, soot or other air pollution, vibrations, and other adverse impacts, conditions or nuisances which could arise from EQT's operations. He also discussed freshwater impoundments and the water testing required at that site. In addition, based on Google Earth, Mr. Domman testified as to the proximity of

---

[8] *See* November 10, 2015, Hearing, Notes of Testimony (N.T.) at 129-217; R.R. at 604-692a.

10

neighborhoods to the proposed Bickerton Well Site and how many of them would be located within the half mile safety radius that the Applicants had discussed. He also commented on the evacuation in Greene County that had occurred due to an explosion and its effect on those residents. December 23, 2015, Decision of Council, F.F. No. 22(b).

Mr. Baumgartner testified as to his proximity to the Trax Farm well site and commented on negative impacts there, such as noise, vibrations, and odors. Stating that Southwestern Regional Health Association had advised him as to the presence of airborne particulate matter restricting outdoor activities, he alleged that air quality levels and diesel odors had required him and his wife to evacuate their home several times and had forced his pregnant daughter to move out on her doctor's advice. In addition, he stated that he had a respiratory illness requiring hospitalization due to the issues at the well site. Finally, alleging that he and his wife were going to sell their house, he encouraged Council to investigate EQT's fines and violations. *Id.*, F.F. No. 22(c).

Mr. Gniadek, a water truck driver who had worked in the oil and gas industry, testified as to an incident near the Trax Farm well site where he witnessed a malodorous, thick, white cloud which caused him to fall ill, return to his house, and call an EQT contact. Gniadek relayed that the contact indicated that there had been no other complaints and laughed at him. Thereafter, Gniadek stated that he had red dots over his entire body and later was told that they were indicative of asphyxiation. He also stated that EQT offered him $50,000 as part of an offer that was being made to everyone on his street that they all had to accept, which was later changed to permit each neighbor to decide individually. Finally, like Mr.

11

Baumgartner, he testified that, after noise complaints, EQT would change its operations during an investigation period. *Id.*, F.F. No. 22(d).

Mr. Tullai, who had recently moved to Jefferson Hills from near the Trax Farm well site, testified as to issues that had occurred at the Trax Farm site such as sleep-disrupting noise and annoying diesel fumes. He recommended freshwater impoundment testing to ensure that hydraulic fracturing water is left in the impoundments. *Id.*, F.F. No. 22(e).

Ms. Caulkett testified that she lives approximately one thousand feet from the proposed Bickerton Well Site and expressed concerns about noise, smell, and the effect of the vibrations on underground mines. She was concerned about mine subsidence and whether the drilling would exceed the two parcels at issue. *Id.*, F.F. No. 22(f). Raising the possibility of the drilling going underneath her house, she asked whether EQT would enter into a deal and reimburse her for that portion of the gas. November 10, 2015, Hearing, Notes of Testimony (N.T.) at 188-190; R.R. at 663-665a.

Ms. Morgan discussed the hearing notice and opined that there should have been better notice to the residents. She also asked questions as to the mechanics of how Council would proceed, what it would consider, and whether there would be additional hearings. She noted that many of her questions had been answered during the presentation and comment period. *Id.* at 200; R.R. at 675a.

Ms. Marcucci, who resides in Pleasant Hills, PA, but not in the Borough, is employed as a community outreach coordinator for the Environmental Integrity Project. She testified that EQT was fined as a result of her employer's research project on one of EQT's sites in Tioga County due to switching permanent freshwater impoundments into flowback ponds. In addition, she opined

12

that the Applicants' practice of having only two persons applying for all of their permits could result in details being missed. She also discussed air quality permitting practices that the natural gas industry uses to avoid tighter regulation and noted EQT's flaring practices and their effect on the sound coming from a well site into the community. December 23, 2015, Decision of Council, F.F. No. 22(a).

Ms. Kaufmann, a borough resident and family nurse practitioner with a doctorate in public health,[9] testified as to the health risks involved in hydraulic fracturing and referenced some of the studies with which she was familiar such as a recent one from the Johns Hopkins School of Public Health regarding fracking and pregnancy. She also discussed a recent consensus statement from the American Academy of Pediatrics and the fact that the state of New York banned hydraulic fracturing based on certain research. In addition, she testified as to the changes that she has seen in health conditions in Cecil Township such as an increase in bad rashes, asthma exacerbations, unexplained coughs, and nose bleeds. November 10, 2015, Hearing, N.T. at 209; R.R. at 684a. Finally, she encouraged Council to consider the knowledge of health risks and the potential cancer lag time between exposure and presentation before moving forward with a decision on the Bickerton Well Site. December 23, 2015, Decision of Council, F.F. No. 22(h).

Having carefully reviewed the objectors' testimony, we conclude that it is insufficient to meet their burden of proof. Without a doubt, they testified about serious problems at other well sites or the harms posed by drilling and operation of unconventional wells generally. While such testimony might persuade legislators to prohibit such drilling, it does not satisfy their burden to

___

[9] There is no indication from the hearing transcript that Ms. Kaufmann was qualified as an expert.

13

show that the development of the Bickerton Well Site would have an impact on public health, safety, and welfare beyond that normally associated with any other unconventional well site. Besides asking some questions, they failed to present either lay or expert testimony specific to the Bickerton Well Site proposal. As common pleas noted, their testimony was the kind of speculative evidence[10] insufficient to constitute proof of detriment to health, safety, and welfare exceeding those ordinarily to be expected from the proposed use. *See Kretschmann Farm*, 131 A.3d at 1055. Accordingly, given the fact that there has been a legislative decision that the particular use is presumptively consistent with the health, safety, and welfare of the community, the objectors' testimony is insufficient to satisfy their burden, and it is not the role of the Council in adjudicating a conditional use application, let alone for the courts, to second guess the legislative decision underlying the ordinance.

Finally, Council's decision to augment the conditional use requirements with criteria based on the ERA is tantamount to an attempt to, *sub silentio*, abrogate the legislative determination that a conditional use for oil and gas drilling is consistent with municipal planning objectives and with the public health, safety and welfare, including protection of the environment.[11] Therefore, once the Applicants met the specific requirements of the ordinance, their proposed use

---

[10] The Borough has raised a concern that the testimony of lay witnesses based on their own personal experiences will never be sufficient to constitute the requisite probative evidence to establish that a conditional use poses a detriment to public health, safety, and welfare. We do not in any way suggest that the testimony of lay witnesses is insufficient, *per se*, but instead, that probative evidence may not consist of speculation or testimony, even if concrete, which relates generally to potential harmful effects of the use permitted by the ordinance.

[11] *See* note 2 at 5, *supra*, quoting Section 1(1)(A) of Ordinance 833. No argument is being made here that the conditional use allowance of unconventional gas wells, which is specifically authorized by Pennsylvania statute, violates the ERA.

14

enjoyed a presumptive consistency with that legislative determination. *See Sheetz*, 804 A.2d at 115.

Accordingly we affirm the decision of common pleas which reversed the Council's denial of the conditional use application. Nonetheless, because of Council's outright denial, it did not consider attaching reasonable conditions to Applicants' project, to some of which Applicants had expressed their amenability, such as water testing and noise reduction. Given the environmental sensitivity of unconventional gas well drilling, we believe it is appropriate that we remand so that reasonable conditions may be considered and, if found to be necessary, attached to the grant of this conditional use. This consideration may be accomplished by common pleas on remand,[12] or that court may remand further for consideration by Borough Council.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[12] Section 1006-A of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 11006-A. Section 1006-A was added by the Act of December 21, 1988, P.L. 1329.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

EQT Production Company and :
ET Blue Grass Clearing, LLC :
 :
   v. : No. 1184 C.D. 2016
 :
Borough of Jefferson Hills, :
     Appellant :

# **O R D E R**

AND NOW, this 18th day of May, 2017, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.  However, the matter is remanded to the Court of Common Pleas, in accordance with the foregoing opinion, for consideration of whether the conditional use application should be subject to reasonable conditions and, if so, imposing such conditions.

   Jurisdiction relinquished.

          _____
          **BONNIE BRIGANCE LEADBETTER,**
          Senior Judge

EQT Production Company and :
ET Blue Grass Clearing, LLC :
: No. 1184 C.D. 2016
v. :
: Argued: November 14, 2016
Borough of Jefferson Hills, :
Appellant :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


DISSENTING OPINION
BY JUDGE McCULLOUGH                    FILED: May 18, 2017


I respectfully dissent from the thoughtful Majority because I do not agree that Objectors' testimony and documentation "was the kind of speculative evidence insufficient to constitute proof of detriment to health, safety, and welfare exceeding those ordinarily to be expected from the proposed use." (Maj. op. at 14.)[1]

---

[1] Pursuant to the Ordinance of the Borough of Jefferson Hills (Borough), as implemented and modified by our decision in *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 911-12 (Pa. Cmwlth. 1980), Objectors had the initial burden of adducing sufficient evidence establishing that, in all likelihood, the use will "endanger the public health, safety or welfare [or] deteriorate the environment, as a result of being located on the property where it is proposed." (Ordinance, §1003(a).) *See Manor Healthcare v. Zoning Hearing Board*, 590 A.2d 65, 71 (Pa. Cmwlth. 1991) (discussing the burden of proofs under *Bray*: "[T]he Zoning Ordinance may, as here, place the 'burden of proof' on the applicant as to the matter of detriment to health, safety and general welfare. Such a provision in the Zoning Ordinance, however, merely places the persuasion burden on the applicant. The objectors still retain the initial presentation burden with respect to the general matter of the detriment to health, safety and general welfare.").
**(Footnote continued on next page…)**

Initially, I note that on a conceptual level, where, as here, an applicant seeks a conditional use and proposes to install novel infrastructure within a municipality's borders, it is relatively difficult for the objectors to demonstrate that the infrastructure will have a negative impact on the health, safety, welfare, or environment of the community. Oftentimes, the objectors testify that they have a generalized "fear" or "concern," without any supporting factual basis, that the proposed infrastructure will result in some type of harm. The primary reason for this is that the new infrastructure is not yet in place and the objectors have not had the opportunity to perceive or experience its effects first-hand, and, as a result, they are reduced to testifying only as to the sheer possibility of a negative consequence. This Court has consistently concluded that such testimony constitutes mere speculation and is insufficient to satisfy the objectors' burden of proof. *See, e.g., JoJo Oil Company, Inc. v. Dingman Township Zoning Hearing Board*, 77 A.3d 679, 689 (Pa. Cmwlth. 2013) ("Objectors' witnesses testified generally about the possibility of an explosion and their concerns about living in proximity of the facility. There was no evidence of prior problems with such facilities.").

But this case is clearly distinguishable from *JoJo Oil Company, Inc.* Objectors' evidence in this case is of a different pedigree altogether. Objectors are

**(continued…)**

Distilled to its essence, the only issue in this appeal is whether Objectors satisfied this burden because the Borough Council of the Borough of Jefferson Hills (Council) determined that EQT failed to persuasively demonstrate that operation of the Bickerton Well Site would not result in a detrimental impact. Council's Findings of Fact (F.F.) Nos. 25, 27; Conclusion of Law (COL) at GG. Because the Council made the necessary findings of facts, any error that it committed in applying the burden-shifting framework of *Bray* was a harmless one. *See Appeal of R.C. Maxwell Co.*, 548 A.2d 1300, 1303-05 (Pa. Cmwlth. 1988).

not merely expressing "concerns" or "fears" of abstract possibilities in a realm of conjecture. To the contrary, Objectors' evidence is specific and concrete and they have established, through comparative evidence, that a substantially similar natural gas production facility owned and operated by EQT – the "Trax Farm Well Site" – has had a detrimental effect on Union Township, a neighboring municipality. As the Council found as fact:

> 1. The proposed [Bickerton Well Site] is approximately 126 acres and will include unconventional wells both at the vertical and horizontal laterals and be hydraulically fractured. [EQT] testified that the proposed wells would likely descend six thousand to seven thousand (6,000-7,000) feet vertically before being turned horizontal outward up to ten thousand (10,000) feet.

> \* \* \*

> 7. Exhibit C evidences the presence of wetlands and unnamed tributaries to Peters Creek very near the vicinity of the 126 acre proposed well site.

> \* \* \*

> 22. The following persons, after being duly sworn, testified at the November 10, 2015 public meeting:

> \* \* \*

> b. Bob Dorman – Union Township: **Commented on "gag agreements" EQT offered residents near the EQT Trax Farm well site wherein residents would grant an easement/right-of-way over and above their properties to EQT for noise, dust, light, smoke, odors, fumes, soot or other pollution, vibrations, adverse impacts or other conditions or nuisances which may emanate from EQT's operations**; provided [Council] with copies of such agreements; [and] noted the

PAM – 3

proximity of neighborhoods to the proposed Bickerton well site and how many of them would be within the half mile safety radius [EQT] discussed . . . .

c.      Gary Baumgartner – Union Township:  Provided [Council] with an exhibit demonstrating his home's geographic relationship to the EQT Trax Farm well site[;] **commented on the life-disrupting levels of vibration coming from the Trax Farm well site which he alleges cause sleep deprivation and visible shaking of household items**; **discussed odors such as diesel fumes and sulfur coming from the well site**; **commented upon advice given to him by the Southwestern Regional Health Association regarding the presence of airborne particulate matter emanating from the hydraulic fracturing operation and settling on nearby properties** restricting outdoor activities such as lawn mowing, gardening, and playing in grass; **alleged air quality levels and diesel odors requiring evacuation of his home**; **stated that issues with noise, air quality, and odors forced his pregnant daughter to move out [of the house] at the recommendation of her doctor** and that he and his wife also had to move out countless times; [and] **alleged a respiratory illness requiring hospitalization was due to issues from the Trax Farm well site** . . . .

d.      Mickey Gniadek – Union Township:  **[T]estified about a December 4, 2013 incident where he went outside of his house near the Trax Farm well site**, **witnessed a thick white cloud about three-and-half feet off the ground, [and] smelled an acidic and then chlorine-like smell**; **stated that after this incident he had red dots over his entire body and was later told his symptoms were one of the signs of asphyxiation**; [and] recounted that after this incident an EQT subcontractor arrived at his house to offer him $50,000.00 as part of an offer that was being made to the people in his neighborhood, which first required everyone to sign on and was later changed to allow each neighbor to decide individually . . . .

e. Andy Tullai – Jefferson Hills, Pennsylvania: Recently moved from near Trax Farm well site to Jefferson Hills; **testified about low frequency sounds that would come from the Trax Farm well site and cause loss of sleep; [and] commented on the annoyance of diesel fumes** . . . .

\*     \*     \*

h. Judith Kaufmann – Jefferson Hills, Pennsylvania: Family nurse practitioner, holds a doctorate in public health, wanted to testify based on her professional roles and Borough resident status[;] **stated that the American Academy of Pediatrics had recently released a consensus statement warning people and urging them to not move forward with fracturing until health data can be reviewed due to the apparent ability of fracturing related toxins to cross the placenta during pregnancy** and contaminate cord blood, amniotic fluid, and breast milk in addition to the placenta; **[and] noted that fracturing chemicals such as benzene, ethylene and formaldehyde can cause cancer and in the case of ethylene, it is also considered a neurotoxin** . . . .

(Council's F.F. Nos. 1, 7, 22b-e, h) (citation omitted).

In its brief, the Borough explains: "Because there is presently no unconventional oil and gas development within the Borough, the focus of [Objectors'] evidence was associated with EQT's existing [Trax Farm] unconventional well site in Union Township, Washington County, that was similar to what was proposed in the [Borough]." (Borough's brief at 18.)[2]

Previously, this Court reaffirmed that while an objector's "bald assertions, personal opinions and speculation will not" suffice to prove detrimental impact on a community, "[t]estimony based on specific past experiences can satisfy this burden . . . ." *Servants Oasis v. Zoning Hearing Board of South*

---

[2] EQT admits that this statement is accurate. (EQT's brief at 32 n.12.)

*Annville Township*, 94 A.3d 457, 465 (Pa. Cmwlth. 2014) (citing *Visionquest National, Ltd. v. Board of Supervisors of Honey Brook Township, Chester County*, 569 A.2d 915, 917-18 (Pa. 1990)).

Citing case law from this Court, our Supreme Court in *Visionquest* stated that "testimony as to prior experiences with the specific proposed use, while the use was conducted unapproved or unlawfully, should be given greater weight in determining the detriment to the community as such testimony is clearly not speculative." *Id.* at 918 (citing *Tuckfelt v. Zoning Board of Adjustment of the City of Pittsburgh*, 471 A.2d 1311 (Pa. Cmwlth. 1984); *Atlantic Richfield Company v. City of Franklin Zoning Hearing Board*, 465 A.2d 98 (Pa. Cmwlth. 1983); *Hannon v. Zoning Board of Wilkes Barre*, 379 A.2d 641 (Pa. Cmwlth. 1977)).[3]

---

[3] In *Tuckfelt*, the applicants sought an occupancy permit or special exception to rent the third floor of a building to two individuals. Based on the testimony of nearby landowners concerning their past experiences with the individuals when residing in the building, the trial court found as fact that "the additional roomers added more noise to the neighborhood by playing their own stereo systems, created additional parking problems since there were no on site parking spaces available, added to the trash and litter found on the property, and inhibited their neighbor's enjoyment of their surrounding properties by having loud parties that generated litter which was on occasion cleaned up by neighboring residents." 471 A.2d at 1314-15. Because this finding was supported by substantial evidence, and the landowners' testimony was not speculative, this Court concluded that there was evidence sufficient to establish an adverse effect on the health and safety of the community. *See Hannon*, 379 A.2d at 461-62 (concluding that the neighbors' testimony concerning adverse effects of a rooming house while it was operating illegally and without proper licensure warranted the denial of the applicant's request for special exception to operate a rooming house and rejecting the applicant's argument that the zoning board "erred in considering past events at his rooming house").

Similarly, in *Atlantic Richfield*, the applicant requested a special exception to convert an existing gasoline station to a mini-market with self-service gasoline pumps. In opposition, several residents who resided close to the gasoline station testified as to the adverse effects of the unconverted gasoline station, including loud noise, littering, and loitering. This Court stated: "[I]t is clear that this is not a case where the objectors offered unfounded presuppositions as proof. It was on the basis of their prior experiences with the twenty-four hour operation of the
**(Footnote continued on next page…)**

PAM – 6

Although the Supreme Court in *Visionquest* pointed to incidents occurring at another facility operated by the applicant to bolster the objectors' testimony, it appears that neither the Supreme Court nor this Court has ever determined whether the rule announced in *Visionquest* applies in the situation where the objectors' testimony is based solely upon the effects they experienced at a substantially similar facility located in an adjoining municipality. Nevertheless, logic and fundamental fairness dictate that such an extension should be made, at least in the context of this case, where there is no unconventional gas well located within the Borough upon which to compare generally or analyze when it is operated unlawfully/unapproved and prior to an application for a special exception. After all, "specific past experiences," *Visionquest*, 569 A.2d at 918, are no less meaningful simply because they occurred elsewhere and the inquiry should naturally and predominately focus on what it is that caused those experiences. This is especially true considering that within the rationale of *Visionquest* is the unstated presupposition that what has happened (or more appropriately, "experienced") in the past is competent evidence of what will continue to happen in the future.

Moreover, this extension of the *Visionquest* rule is an extremely modest one that has a strong foundation in other areas of the law. In point of fact, evidence of a substantially similar accident or harmful consequence is admissible in civil law cases to prove that an instrumentality or condition is defective or

---

**(continued…)**

unconverted gas station that they attempted to prove the adverse effects of the proposed conversion of the gasoline service station." 465 A.2d at 100. Therefore, we concluded that the zoning board did not err in determining that the proposed conversion would constitute a detriment to the public health, safety, or welfare of the community.

dangerous, *see Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1227-31 (Pa. Super. 2011),[4] and evidence of a substantially similar property is admissible in tax assessment cases to prove another property's fair market value, *see Aetna Life Insurance Co. v. Montgomery County Board of Assessment Appeals*, 111 A.3d 267, 278-81 (Pa. Cmwlth. 2015).[5] The overriding and underlying thrust of these cases is that when two objects are demonstrated to be like in kind, proof of how an object performed, operated, and/or functioned in a certain circumstance tends to prove how the object will perform, operate, and/or function in a remarkably similar circumstance.

Notably, Objectors' testimony is based on their first-hand observations and experiences at the Trax Farm Well Site and is by no means "speculative" in that sense of the legal term. *See Gibson v. Workers' Compensation Appeal Board (Armco Stainless & Alloy Products)*, 861 A.2d 938,

---

[4] In *Blumer*, the plaintiff alleged that a defective design of a parking brake caused the brake to disengage, resulting in a truck rolling down a hill and killing an individual, and asserted a strict product liability claim under a malfunction theory. The Superior Court explained that "[e]vidence of prior accidents involving the same instrumentality is generally relevant to show that a defect or dangerous condition existed," *id.* at 1228, and concluded that twenty-five reports of prior, similar incidents from other consumers was admissible to prove that the truck's parking brake mechanism was defective.

[5] In *Aetna Life*, this Court noted that the comparable sales approach is one of the methods to determine a property's fair market value for tax assessment purposes. We reiterated: "[I]n determining market value, 'comparables' means properties of a similar nature which have been recently sold. In order to be comparable . . . however, the properties need not be identical . . . . Thus, comparisons based on sales may be made according to location, age and condition of improvements, income and expense, use, size, type of construction and in numerous other ways." *Id.* at 279 (citation omitted). Ultimately, in *Aetna Life*, this Court concluded that the trial court did not err in assessing a property's fair market value based, in large part, on the values of the other, comparable properties.

944 (Pa. 2004) (stating that the Pennsylvania rule of evidence pertaining to lay person testimony "contemplates admission of lay opinions rationally based on personal knowledge that are helpful to the trier of fact. At common law, witnesses not qualifying as experts were generally permitted to testify regarding those things that they had seen, heard, felt, tasted, smelled, or done.") (citation and internal brackets and quotations omitted). Objectors' testimony is also buttressed by medical information that Objectors referenced and relayed at the hearing, and EQT does not take issue with the admission of this information or the Council's findings of fact crediting it. This testimony, I believe, constitutes substantial evidence to support the Council's finding that the grant of the conditional use will have a detrimental impact on the community

The Majority's conclusion requiring Objectors "to present either lay or expert testimony specific to the Bickerton Well Site," (Maj. op. at 14), is unduly restrictive and impracticable, has the effect of placing upon Objectors an almost insurmountable burden of proving detrimental harm, and threatens "the 'inherent and indefeasible' right of our citizens to possess and protect property." *PA Northwestern Distributors, Inc. v. Zoning Hearing Board of Moon Township*, 584 A.2d 1372, 1375 (Pa. 1991) (citing and quoting Article 1, Section 1 of the Pennsylvania Constitution, Pa. Const. art. I, §1); *see also Cleaver v. Board of Adjustment of Tredyffrin Township*, 200 A.2d 408, 413 (Pa. 1964). To be sure, even if Objectors had hired an expert, the expert most likely would have had to rely on comparative data from other well sites to support his/her opinion regarding the Bickerton Well Site. *See Collins v. Hand*, 246 A.2d 398, 404 (Pa. 1968) (discussing foundational requirement for the admissibility of expert testimony). Significantly, EQT had the opportunity to rebut Objectors' testimony that the

vibrations, "clouds," and "fumes" from the Trax Farm Well Site caused illness and sleep deprivation. EQT also had the chance to offer evidence that these incidents never occurred or explain how they were the result of negligent mistakes that have been later identified and corrected or mere events of unforeseeable circumstances. EQT did not do so.

Contrary to the Majority, I would conclude that Objectors' testimony is not speculative or incompetent as a matter of law, but, instead, is admissible evidence capable of being assessed for the worth that the fact-finder decides to provide it. In its role as the ultimate fact-finder, *see In re Thompson*, 896 A.2d 659, 668-69 (Pa. Cmwlth. 2006), the Council in this case determined that Objectors' testimony was credible and persuasive, afforded significant weight to the testimony, and found as fact that the grant of the conditional use would not protect the health, safety, and welfare of Borough as required by the Ordinance. (Council's F.F. No. 22; COL at B, G.) In particularized detail, Objectors testified how the Trax Farm Well Site released harmful chemicals that have had an adverse effect on the residents (or then residents) of Union Township, most notably their physical and mental health. From this evidence, it was within the exclusive province of the Council, as the fact-finder, to draw the inference that it is likely that the same effects will happen to the Borough's residents with the Bickerton Well Site. That is just what the Council sought to do here when it considered what had happened at the Trax Farm Well Site and denied EQT a special exception in the name of protecting "the public health, safety, [and] welfare" of the Borough. (Ordinance, §1003(a).)

Accordingly, I would conclude that Objectors' evidence was sufficient to satisfy their burden of proof and that EQT failed to persuade the

Council that the Bickerton Well Site would not have negative impact on the Borough.  Hence, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge