# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marina Elnitski, Maison Lodging,    :
LLC and Doug Colkitt    :
    :
    v.    :    No. 762 C.D. 2023
    :    Submitted: June 7, 2024
Benner Township Board of    :
Supervisors    :
    :
    v.    :
    :
Jared L. Evey and Kathy E. Evey    :
    :
Appeal of: Marina Elnitski    :

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
    **HONORABLE MATTHEW S. WOLF**, Judge
    **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**    **FILED: July 9, 2024**

Marina Elnitski (Appellant), pro se, appeals from an Order of the Court of Common Pleas of Centre County (common pleas) denying Appellant's appeal from and affirming a written decision of the Benner Township (Township) Board of Supervisors (Board), which denied a conditional use application filed by Appellant.[1] Appellant argues common pleas erred in concluding that the Board did not have

---

[1] Maison Lodging, LLC and Doug Colkitt also were applicants before the Board but filed a notice of nonparticipation in this appeal on August 14, 2023.

adequate time to consider Appellant's alternative plan and had substantial evidence of safety concerns. After review, we affirm.[2]

## I. BACKGROUND

### A. First Application for Conditional Use

On June 3, 2021, Appellant initially submitted to the Board an application for conditional use to develop a recreational vehicle (RV) park in the Township (First Application). Appellant owns properties identified as Centre County Tax Parcel No. 12-317-019 (Parcel No. 019) and Centre County Tax Parcel No. 12-317-20 (Parcel No. 020) (collectively, the Parcels). (November 1, 2021 Conditional Use Decision (First Decision), Background.[3]) Parcel No. 020 is currently being used as the Bellefonte Airport and Parcel No. 019 is currently being used to farm crops. (First Decision, Findings of Fact (FOF) ¶¶ 13, 15.) Appellant proposed to subdivide the Parcels, reduce the size of Parcel No. 019, and expand Parcel No. 020 to provide additional setback from the Bellefonte Airport for development of the RV park. (*Id.* ¶¶ 16-17.) The Parcels are located in an Agricultural Zoning District, and the Benner Township Zoning Ordinance (Ordinance)[4] lists campgrounds, including RV parks, as conditional uses in Agricultural Zoning Districts. (*Id.*, Background.) Appellant planned for a 100-unit RV park with 60 RV lots and 40 "tiny homes," each with a lot size of 40 feet by 100 feet, for events primarily at the Pennsylvania State University (Penn State). (*Id.*, Background & FOF ¶ 35.)

Multiple hearings were held on the First Application on August 2, 2021, September 2, 2021, and October 4, 2021 (collectively, First Application Hearings).

_____

[2] This Court granted Appellant's Application to Expedite on May 16, 2024.
[3] The First Decision is in the Supplemental Reproduced Record at 327b-343b.
[4] BENNER TWP., CENTRE CNTY., PA., ZONING ORDINANCE (2021).

At each hearing, Appellant was not present but was represented by her son, John Elnitski.[5] (*Id.*, Hearings.) Numerous members of the public testified at each of these hearings in opposition to the proposal. (*Id.*) Many of the concerns posed by the public were relative to safety, including increased traffic congestion, proximity to the airport, and tailgating activities related to Penn State football games and Penn State-related events. For example, relative to proximity of the Bellefonte Airport, a representative from the Pennsylvania Department of Transportation, Bureau of Aviation, voiced "significant" concerns about having the campground/RV park adjacent to the Bellefonte Airport. (*See* First Decision, FOF ¶¶ 31-34, 47.) Further, a member of the public submitted an Air Safety Institute Report that documented accidents occurring during flight instruction and testified that an incident at the Bellefonte Airport occurred "in November of 2020 where a plane went off the runway." (August 2, 2021 First Application Hr'g Tr. at 119;[6] First Decision, Ex. K.) Photos of that incident were also submitted. (August 2, 2021 First Application Hr'g Tr. at 119; First Decision, Ex. L.)

At the conclusion of the First Application Hearings, the Board unanimously voted to deny the First Application and issued a written decision on November 1, 2021 (First Decision). The Board denied the First Application because it "did not satisfy all the objective criteria set forth in [Section 14.18 of] the . . . Ordinance for a campground/[RV] park use" including a lack of adequate toilet facilities, screening of adjoining properties, appropriate setbacks and spacing for the RV spots, lighting, recreational areas, and a dump station. (First Decision, Conclusions of Law (COL)

---

[5] The First Decision mistakenly identifies Mr. Elnitski as the "**mother** of the owner of the subject properties[.]" (First Decision, Hearings (emphasis added).) However, it is clear from the record that Mr. Elnitski is the son of Appellant.

[6] The August 2, 2021 First Application Hearing Transcript can be found in the Supplemental Reproduced Record at 173b-204b.

¶¶ 15-21.) The Board also found that the First Application "would be harmful to the health, safety and welfare of the community" "in which it is proposed to be located." (*Id.* ¶ 22.)

*B. Second Application for Conditional Use*

Appellant did not appeal the First Decision, but, rather, filed a second conditional use application on October 25, 2021 (Second Application). Appellant again proposed a RV park on the Parcels with 100 total lots, an internal road system, recreational areas, stormwater management facilities, utility services, and a clubhouse. (January 3, 2021 Conditional Use Decision (Second Decision), Background.) Appellant eliminated the "tiny homes" and instead proposed 60 RV lots designated as "RV-A Spaces" and 40 lots designated as "RV-B Spaces." (*Id.*) The RV-A Spaces would be 40 feet by 100 feet and the RV-B spaces would be 45 feet by 90 feet or 70 feet by 70 feet. (*Id.*) The Second Application focused on the deficiencies cited by the Board in denying the First Application. One of those deficiencies, relevantly, was that the First Application did not have the requisite recreational area under Section 14.18(K) of the Ordinance, which requires that "a minimum of 20[%] of the gross area of the campground [] be devoted to active and passive recreational facilities." Ordinance § 14.18(K).[7] Appellant proposed that the grass area between RV-A Spaces and RV-B Spaces be calculated toward the requisite recreational area under Section 14.18(K). Appellant thereafter submitted an amended Second Application on December 1, 2021, with revisions submitted on December 7, 2021, designating three alternative areas for recreational space labeled

---

[7] Relevant sections of the Ordinance are in the Supplemental Reproduced Record at 345b-349b.

4

as consisting of 0.66 acres, 1.03 acres, and 5.19 acres rather than counting the grass area between each RV space (Amended Second Application).[8]

A hearing was held on December 9, 2021 (Second Application Hearing). Mr. Elnitski again appeared on behalf of Appellant. Mr. Elnitski began his testimony by stating that he would be addressing the "highlight[ed]" deficiencies cited by the Board in the First Decision. (Second Application Hr'g Tr. at 10.)[9] Mr. Elnitski stated he would not address the criteria of the Ordinance that the Board found were met in the First Application, (id. at 11), and the Board could take notice of the First Application and the information obtained at the First Application Hearings to supplement any issues not covered in the Second Application Hearing, (Second Decision, FOF ¶ 43). Mr. Elnitski structured his presentation by taking the list of deficiencies cited by the Board in the First Decision and stating that those deficiencies have now been cured. For illustration, beginning with the criteria for "outdoor play areas being screened[,]" Mr. Elnitski testified that "we put up a six-foot privacy fence . . . so it blocks all the residents that are there. So we meet that objective criteria now because the outdoor play area within the park is . . . screened by that fence." (Second Application Hr'g Tr. at 11-12.) The Board had no questions, so Mr. Elnitski moved to the requirement to have "use of outdoor play areas [] be

---

[8] It is unclear exactly when and how many times Appellant amended the Second Application. The Board states that Appellant amended the Second Application once on December 1, 2021. (Second Decision, Background.) Common pleas states that Appellant amended the Second Application twice – once on December 1, 2021, and again on December 7, 2021. (Common pleas Opinion (Op.) at 2.) It appears that Appellant, in a Supplemental Reply Brief submitted to common pleas, designated an exhibit (Exhibit B) as the "Reduced 12/7/2021 Conditional Use Plan." (See Original Record Item No. 42, Ex. B.) It appears that Exhibit B is the same plan that the Board considered as the Amended Second Application in the Second Decision. (See Second Decision, Ex. 3.)

[9] The Second Application Hearing Transcript can be found in the Supplemental Reproduced Record at 5b-101b.

limited to registered guests and visitors." (*Id*. at 12.) Mr. Elnitski pointed to the map of the proposed RV park and stated that "[w]e added that to the plan" and asked if the Board had any questions, which it did not. (*Id*.) So, Mr. Elnitski moved to the next requirement of the Ordinance that the Board cited as deficient in the First Decision. This pattern continued for the remainder of the deficient requirements. Relevant to this matter, Mr. Elnitski later discussed the requisite recreational area under Section 14.18(K), which the Board found deficient in the First Decision. The entirety of the discussion between Mr. Elnitski, Randy Moyer, Chairman of the Board (Mr. Moyer), and Rodney A. Beard, Township Solicitor (Mr. Beard), concerning the recreation/recreational or "rec" areas was follows:

> Mr. Elnitski: . . . [W]e're designat[ing] rec areas as next to the RV spot[s]. . . .
>
> [. . . .]
>
> There is nothing in the [O]rdinance that says that that area can't be used as rec area. The only thing I could find, I couldn't find any case law. I asked the attorney if [he] could find any case law, he couldn't. I did send to him a zoning ordinance from Washington that said outside the pad, the parking pad for [a] RV, that area could be used for open space and rec. . . .
>
> [. . . .]
>
> Now, in the alternative that it goes to [development] and we want to talk more about this, we've shown alternate, not – what we need is six acres of rec spot. We have on the plan alternative rec areas that amass over six [acres] if we have to go that route. So we have the rec area, but we would rather designate the rec area at the campsites for now and then move on and when we go into development we hash all these things out about the rec areas, what we're going to put there, that type of thing, so any questions on that?
>
> Mr. [] Moyer: No.

Mr. Elnitski:  [Mr. Beard], do you have anything?

Mr. Beard:  The only thing I would add is . . . some assistance with interpreting the [O]rdinance provisions pertaining to the required recreation areas.

The . . . [O]rdinance defines passive recreation area and active recreation area.  It does not actually say what specific places are calculated as recreation area.  It does give examples of what [it] mean[s] by passive recreation and active recreation.

When I looked at that in our [O]rdinance, my interpretation is that the notion of a recreation area is something that is for the entire, all the patrons of the park would be able to use.  The individual campsites are for individual, you know, patrons to say, hey, this is my space, I can exclude others from this space.  Even though there might be a picnic table there, it doesn't mean that the patron in [l]ot [n]umber 88 can go use the picnic table in [l]ot [n]umber 6.  I would anticipate that the folks in [lot] [n]umber 6 would not want the folks from [lot] [n]umber 88 coming down and using their picnic table.  So I interpreted the definition and the examples given in our [O]rdinance as pertaining to the public recreation areas that all patrons of the park could use.  That's why my recommendation . . . was not [to] include the individual campsites spaces, even though they are outside the pad where a unit may be parked.  My recommendation was to not include those individual spaces as part of the calculation of the recreation area.  That's the way I interpreted it.

Mr. Elnitski:  But that was before I gave you a concrete example . . . and our [O]rdinance here . . . does not say we can't do that.  And you can't impose something on me unless you address it in the [O]rdinance.

And I have – I can show that it has been used as passive rec.  Now we're not going to restrict anybody from going to one spot to the other.  We're not going to have a policy like that.  And that one picnic table could house three campers of people that went together, okay, picnicking counts as rec.  We're putting more land per spot because what we could do is we could put everybody tighter and then put a square of rec area somewhere else.  Okay.

We think it's beneficial to everybody, including the [T]ownship, that we take this approach, but we do have the rec area and other areas as an alternate.  I think that is something we'll work out in development.

[. . . .]

Mr. [] Moyer: I don't – yeah, I mean, I don't – if our [O]rdinance says that, that's fine. I mean, but, you know, if I was camping and I wouldn't –

Mr. Elnitski: Well, yeah.

Mr. [] Moyer: – want to rent a pad and then have no say in who's sitting at my table.

Mr. Elnitski: Right, and I don't expect that to happen.

Mr. [] Moyer: That doesn't make much sense.

Mr. Elnitski: But at the same time, [the space between each RV-A and RV-B spots] can count as rec area, the way I view it.

Mr. [] Moyer: Okay, well I guess –

Mr. Elnitski: [ B]ut we have the right amount of rec area no matter what with the –

Mr. [] Moyer: That was my next question –

Mr. Elnitski: Yes.

Mr. [] Moyer: – you meet it regardless?

Mr. Elnitski: Regardless.

Mr. [] Moyer: Okay. That's what I –

Mr. Elnitski: Okay. But we want to be open with you what we are trying to.

Mr. [] Moyer: Right.

[. . . .]

Mr. [] Moyer: . . . . I was just trying to make sense of it because I know when I went camping I thought I was renting the facilities of [l]ot

8

[n]umber 4, [l]ot [n]umber [6], but anyway you meet it, so it's not worth talking about.

(Second Application Hr'g Tr. at 14-21.)

In addition, to preliminarily rebut any contention that the proposed use will generate increased traffic congestion, Mr. Elnitski presented Greg Shrock, an engineer (Mr. Schrock), who testified that the traffic generation does not meet the Ordinance's requirement for a traffic study because it is so low volume. (*Id.* at 29-30.) Members of the public then testified in opposition citing similar safety concerns as in the First Application Hearings relative to increased traffic congestion, proximity to the Bellefonte Airport, and tailgating activities related to Penn State football games and Penn State-related events. At the conclusion of the Second Application Hearing, the Board unanimously voted to deny.

The Board issued the Second Decision on January 3, 2022. The Board explained that members of the public testified in opposition and cited "safety issues, increased traffic, possible alcohol use/abuse at the campground during Penn State events, and noise." (Second Decision, FOF ¶ 33.) The Board found that the proposed use of a RV park will "generate significant additional traffic when campers and RVs are moving into and out of the campground/RV park." (*Id.* ¶ 26.) The Board further found that the primary intended purpose of the RV park will be to accommodate attendees of Penn State football games and other Penn State-related events. (*Id.* ¶ 27.) In addition to being adjacent to the Bellefonte Airport, which is used as a training facility for inexperienced pilots, the Parcels are located approximately 500 feet from a public elementary school and an equestrian facility. (*Id.* ¶¶ 23, 35, 37-38.) As the Parcels and surrounding area currently exist, the Board found that there are no traffic control measures to address the large RVs and campers that will generate significant additional traffic along with the school buses. (*Id.* ¶

9

30.) The Board also found that individuals staying at the RV park for Penn State football games or events will "materially increase safety concerns" from "tailgating and reveling activities in close proximity to" the Bellefonte Airport, an equestrian facility, and adjoining residences. (*Id.* ¶ 37.) The Board summarized that members of the public testified that "the location of the use is not a good fit for the Township[, that] the proposed use will change the essential character of the neighborhood[,]" which the Board described as "currently low density residential and agricultural[,]" and that the Bellefonte Airport "provides pilot training and flight instruction [of] . . . inexperienced pilots that increases the likelihood of accidents." (*Id.* ¶¶ 31, 34-35.)

The Board further found that the Second Application only contained "minimal recreational areas" as required under the Ordinance. (*Id.* ¶ 41.) The Board explained that at the Second Application Hearing, Mr. Elnitski testified that the space between each RV spot should be included in the calculation of required recreation area. (*Id.*) The Board noted that Mr. Beard explained that under the Ordinance, recreation areas were "intended to be open and utilizable by all patrons of the campground facility[,]" and, as such, Mr. Beard opined that the space between each individual RV spot "occupied exclusively by individual campers" should not be included in the calculation of required recreational area space. (*Id.* ¶ 42.) There was no discussion relative to the alternative recreational area proposed in the Amended Second Application.

The Board thus concluded, again, that Appellant did not meet the objective criteria for a campground/RV park under the Ordinance as there was not "adequate area for active and passive recreation." (Second Decision, COL ¶¶ 13-14.) Because Appellant did not meet her burden, the Board explained that the burden never shifted to objectors; however, the Board noted that objectors presented credible evidence

10

that the proposed conditional use would alter the character of the surrounding area and would be harmful to the general health, safety[,] and welfare. (*Id.* ¶ 15.) Specifically, the Board noted "the proposed conditional use, as presented, would alter the essential character of the neighborhood"; "[t]he proposed conditional use presents significant safety concerns . . . [by] promot[ing] the aggregation of individuals in a dense campground/RV park setting near an operating airport used for . . . flight training purposes[ ] exposing patrons of the campground and the public to risk of accidents"; "[t]he proposed conditional use presents significant safety concerns . . . [by] promot[ing] the aggregation of individuals attending Penn State football games and engaging in tailgating activities near an operating airport and an adjoining equestrian facility"; "[t]he proposed conditional use is harmful to the health, safety[,] and welfare of the community . . . [by] promot[ing] the aggregation of individuals attending Penn State football games and engaging in tailgating activities near adjoining residential properties"; "[t]he proposed conditional use is not in harmony with the orderly and appropriate development of the area where the proposed conditional use is to be located"; and "[t]he nature and intensity of the operations encompassed within the proposed conditional use are not in harmony with the orderly and appropriate development of the area where the proposed conditional use is to be located." (*Id.* ¶¶ 16-19, 21-22.)

In sum, the Board concluded:

> Although campgrounds and RV parks may be permitted as a conditional use in the Agricultural Zoning District of the Township, the proposed location of the campground/RV park that is the subject of this application make it unsuitable in light of the general health, safety, and welfare concerns of the community and neighborhood where it is proposed to be located.

(*Id.* ¶ 24.)

11

*C. Appeal to Common Pleas*

Appellant appealed to common pleas, which did not take additional evidence.[10] In its Opinion, common pleas first addressed Appellant's argument that the Second Application proposed adequate recreational area by including the area in between each RV-A and RV-B space. Common pleas explained that to meet Section 14.18(K) of the Ordinance, Appellant would have had to demonstrate that approximately six acres of land in the RV park were being dedicated as active and passive recreational area. Common pleas explained that the Board considered the exclusivity of each RV spot and concluded that the space in between each spot was not devoted to active or passive recreational areas, which are to be communal in nature. Although the space between each RV spot could be used as recreational area, the primary purpose of these areas was to provide space for each individual spot. Thus, these spaces could not be used in the calculation of the six acres of required recreational space. Common pleas concluded "this is a reasonable interpretation of the Ordinance and the Board's decision was supported by substantial evidence." (Common pleas' Op. at 3-4.)

Common pleas then addressed Appellant's argument that the Board should have considered the alternative acreage proposed in the Amended Second Application. Common pleas concluded that the alternative plan only proposed 5.19

---

[10] Argument was held on January 16, 2023, in front of Senior Judge Daniel J. Milliron. Due to emergency circumstances, Senior Judge Milliron could not render a decision, and this matter was transferred to President Judge Jonathan D. Grine. President Judge Grine requested a transcript of the January 16, 2023 hearing and supplemented the record in this matter with the record from the First Application. However, common pleas noted that the First Application was necessarily part of the Second Application and would have been considered by the Board in resolving that application; therefore, common pleas explained, it did not take additional evidence at any stage of the proceeding. (Common pleas' Op. at 3.)

12

acres of recreational area adjacent to the Bellefonte Airport's runway.[11] (*Id.* at 4.) Common pleas noted that Appellant amended the Second Application "a few days prior to the December 9, 2021 hearing[.]" (*Id.*) Common pleas opined that amendments to conditional use applications are generally permissible, but only if there is enough time for the Board to review and for the opposing party to prepare a defense. (*Id.* (citing *In re Arnold*, 984 A.2d 1 (Pa. Cmwlth. 2009)).) Common pleas stated that for the Board to have given adequate attention to the alternative plan at the Second Application Hearing would have required the Board to evaluate two applications at once. In addition, common pleas noted that the discussion at the Second Application Hearing regarding the alternative plan "was limited to a brief statement by [Mr. Elnitski] stating the alternative plan would meet the recreational area quota, without much, if any, discussion of any potential risks of such an alternative." (*Id.* at 4-5.) Even if Appellant had given the Board adequate time to review the alternative plan, common pleas noted that "there is enough evidence to support a finding of substantial harm to the community and safety issues." (*Id.* at 5.) Relevantly, common pleas determined there was substantial evidence of safety concerns due to the proximity of the Bellefonte Airport and increased traffic congestion.[12] Appellant appealed to this Court.

---

[11] Although common pleas stated the Amended Second Application proposed 5.19 acres of alternative recreational area, the plan appears to show two additional areas labeled as alternative recreational areas of 0.66 acres and 1.03 acres.

[12] Common pleas also noted that the doctrines of res judicata and collateral estoppel are not applicable here as the First Application and Second Application, although relating to the same property for the same use, "are not the same." (Common pleas' Op. at 5.)

13

## II. PARTIES' ARGUMENTS

Appellant first contends that common pleas[13] erred in concluding there was not enough time for the Board to review Appellant's alternative plan regarding the required recreational space under Section 14.18(K) of the Ordinance. According to Appellant, *In re Arnold* was erroneously cited by common pleas and actually supports Appellant's argument. Specifically, Appellant contends that *In re Arnold* stands for the proposition that where an applicant amends a conditional use application to bring the plan into compliance with a zoning ordinance, those amendments are permissible and, here, Appellant amended the Second Application to bring the plan into compliance with Section 14.18(K) of the Ordinance. Appellant challenges common pleas' discussion as to the timing of the amended plan because the Board did not discuss timing as an issue in the Second Decision. Appellant explains that the alternative acreage proposed in the Amended Second Application "is a backup, so the issue could be presented . . . [at] the planning phase for the [T]ownship." (Appellant's Brief (Br.) at 10.) In describing how the alternative acreage was discussed at the Second Application Hearing, Appellant stated that "[Mr.] Moyer asked if [] Appellant met the [O]rdinance for recreational area and [Mr. Elnitski] answered yes." (*Id.* at 11.) Appellant complains that the Board "had a one sentence [declaration] that there was not enough recreational area in" the Second Decision and contends that "[t]he [T]ownship had [the] following options during the hearing[:] The [Township] or [its] attorney could have asked more

---

[13] Appellant erroneously challenges common pleas' Opinion. However, in a land use appeal where common pleas takes no additional evidence, this Court's review "is limited to determining whether **the . . . [B]oard** committed an error of law, or whether **the [B]oard's** findings are supported by substantial evidence." *Tennyson v. Zoning Hearing Bd. of W. Bradford Twp.*, 952 A.2d 739, 743 n.4 (Pa. Cmwlth. 2008) (emphasis added). We will consider Appellant's arguments as if they were properly addressed as challenges to the Board's Second Decision.

14

questions about the alternative recreational area or had a continuance of the hearing, which they had no problem doing in the [F]irst [A]pplication on other issues." (*Id*.)

Appellant secondly argues that common pleas erred in concluding that there was substantial evidence of increased traffic congestion and cites *Bailey v. Upper Southampton Township*, 690 A.2d 1324 (Pa. Cmwlth. 1997), and *In re Cutler Group, Inc.*, 880 A.2d 39 (Pa. Cmwlth. 2005), to support her argument. Appellant explains that Mr. Schrock testified at the Second Application Hearing that the traffic generated by the RV park would not meet the Ordinance's requirement for a traffic study. Appellant further explains that 40 out of 100 RV spots will already have RVs stationed. Appellant lastly challenges the sufficiency of the evidence regarding the RV park's proximity to the Bellefonte Airport and what specific safety concerns objectors had on this basis.

The Board and Jared L. Evey and Kathy E. Evey, who intervened before common pleas, (collectively, Appellees), respond that common pleas did not exclusively rely on the fact that Appellant presented an alternative plan a few days before the Second Application Hearing in concluding that the Board did not err in denying the Second Application. Appellees explain that common pleas also relied on safety concerns relative to increased traffic congestion and proximity to the Bellefonte Airport. Further, Appellees point to tailgating activities as an additional safety concern. Appellees dispute Appellant's use of *Bailey* and *Cutler Group* to support Appellant's argument that there was not substantial evidence of increased traffic congestion. Appellees rather contend that there was ample testimony of safety concerns relative to increased traffic congestion and tailgating activities from Penn State football games and Penn State-related events in the record.

15

Appellant filed a Reply Brief, restating many of the arguments presented in her principal Brief, including concerns about the lack of evidentiary support for the Board's safety concerns. Appellant contends that Appellees are attempting to "create a series of boogeymen and us[e] fear mongering to influence the [C]ourt." (Reply Br. at 1.)[14] For example, Appellant argues that Appellees' discussion of concerns regarding tailgating activities is an attempt to "convince and scare the [C]ourt that the campground will be filled with intoxicated tailgaters[;]" however, Appellant will not promote tailgating. (*Id*. at 2, 6.) In sum, Appellant argues that Appellees have only presented mere concerns about safety issues and did not point to evidence of record to support their concerns.

## III.   ANALYSIS

### A.   *Applicable Law*

Section 603(c)(2) of the Pennsylvania Municipalities Planning Code (MPC)[15] provides, in relevant part, that a zoning ordinance may have "provisions for conditional uses to be allowed or denied by the governing body after recommendations by the planning agency and hearing, pursuant to express standards and criteria set forth in the zoning ordinances." 53 P.S. § 10603(c)(2). In other words, a conditional use is a use that the applicant is "entitled" to, but only if "the specific standards enumerated in the ordinance for the [conditional use] are met[.]" *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006). Applications for conditional uses are considered on a case-by-case basis because the language of the relevant ordinances will differ. *Id*. at 671.

---

[14] Appellant numbers her arguments in her Reply Brief, but also uses numbered pages. We will refer to the numbered pages in our citations.

[15] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10603(c)(2).

In applications for conditional uses, there is a burden-shifting framework. First, "the applicant must demonstrate its entitlement to a [conditional use] by establishing compliance with the specific objective requirements . . . [as] detailed in the ordinance." *Sheetz, Inc. v. Phoenixville Borough Council*, 804 A.2d 113, 115 (Pa. Cmwlth. 2002). The applicant must demonstrate its entitlement by "adduc[ing] testimony sufficient to support a conclusion that the criteria of the ordinance have been met." Robert M. Anderson, *Law of Zoning in Pennsylvania* § 18.10 (1982). If the applicant satisfies this burden, a presumption is created that "the proposed use is consistent with the general welfare." *Aldridge v. Jackson Township*, 983 A.2d 247, 253 (Pa. Cmwlth. 2009). "[T]he burden then shifts to any objectors to establish that the proposed [conditional use] would be detrimental to the public health, safety[,] and welfare." *Sheetz*, 804 A.2d at 115. The objectors must prove "to a high degree of probability[ that] the proposed use will adversely affect the public welfare in a way not normally expected from the type of use." *Aldridge*, 983 A.2d at 253.

A conditional use application "falls within the jurisdiction of the municipal governing body rather than the zoning hearing board." *In re Thompson*, 896 A.2d at 670. As the municipal governing body considers the conditional use application in the first instance, "[a] reviewing court must accept the credibility determinations made by the municipal body which hears the testimony, evaluates the credibility of the witnesses[,] and serves as fact finder." *Id*. at 668. Where the record establishes substantial evidence to support the municipal body's findings of fact, reviewing courts, including this Court, are bound. *See id*. ("Assuming the record demonstrates the existence of substantial evidence, the court is bound by the municipal body's findings which are the result of resolutions of credibility and conflicting testimony.") "It is for the [b]oard to determine whether the applicant has, by credible evidence,

17

satisfied the substantive criteria in the [z]oning [o]rdinance for a conditional use." *Brookview Solar I, LLC v. Mount Joy Twp. Bd. of Supervisors*, 305 A.3d 1222, 1237 (Pa. Cmwlth. 2023). It is not the duty of the municipal government entity to "advocate in these matters[,]" and it has "no duty to present evidence on the criteria which the [applicant] had the duty to support." *Rubin v. Zoning Bd. of Adjustment of Phila.*, 274 A.2d 208, 210 (Pa. Cmwlth. 1971).

Section 14.18(A) of the Ordinance provides that a campground, including a RV park, is a permitted use in an Agricultural Zoning District if it meets the requirements enumerated in that Section, including, relevant here, that "[a] minimum of 20[%]of the gross area of the campground shall be devoted to active and passive recreational facilities." Ordinance § 14.18(A), (K). Article 2 of the Ordinance defines a "recreation area, active" as "[a]ny area developed in such a manner as to be conducive to those activities that fall within the range of active recreation. Examples: [A]thletic fields and hard-surfaced courts, pools, large dams, bicycle and walking trails, open turf areas and apparatus areas." Ordinance, Art. 2. The Ordinance defines a "recreation area, passive" as "[a]ny area developed in such a manner as to be conducive to those activities that fall within the range of passive recreation. Examples: [S]cenic vistas, natural areas, craft areas, meeting areas, sitting areas, walkways, sunbathing, gardens, streams and impoundments, social events, picnicking and spectating areas . . . [.]" *Id*.

In addition to the criteria set forth in Section 14.18, Section 21.14 of the Ordinance provides:

> **Conditional Use –** Where the Board . . . , in this Ordinance, has stated conditional uses to be granted or denied by the Board . . . pursuant to express standards and criteria, the Board . . . shall hear and decide requests for such conditional uses in accordance with such standards and criteria below:

18

A. The location of the use, including with respect to the existing or future streets giving access to it, is in harmony with the orderly and appropriate development for the district in which the use is to be located.

B. The nature and intensity of the operations involved are in harmony with the orderly and appropriate development of the district in which the use is to be located.

C. The grant of the conditional use shall not materially increase traffic congestion on roads and highways, nor cause nor encourage commercial or industrial traffic to use residential streets.

D. The applicant must meet all specific requirements for the specified use in accordance with Article 14, and general requirements in accordance with Article 15, herein.

E. In granting a conditional use, the Board may attach such reasonable conditions and safeguards, in addition to those expressed in this Ordinance, as it may deem necessary to implement the purposes of this Ordinance and the [] MPC . . . .

Ordinance § 21.14. Therefore, an application seeking to use property zoned in an Agricultural Zoning District as a campground or RV park in the Township must meet the criteria set forth in both Section 14.18 and Section 21.14 of the Ordinance.

*B. Consideration of the Alternative Plan*

Appellant does not argue that the Board erred in concluding that the Second Application's acreage plan, which included acreage between campsites, did not meet Section 14.18(K) of the Ordinance; instead, she argues that *In re Arnold* supports her argument that the Amended Second Application was permissible and should have been considered by the Board because Appellant's alternative acreage brought the plan into compliance with the Ordinance. In the case of *In re Arnold*, Walmart submitted a conditional use application to a municipal board initially proposing a

19

gas station on the subject property. Walmart then amended its application to remove the gas station. No additional hearing was held on the amended application. After noting that "[w]hether amendments require new hearings should be decided on a case-by-case basis[,]" this Court explained:

> Generally, amendments which do not change the issues should be permitted, but a modification in the applicant's drawings or plans which is significant in terms of the issues involved probably requires a remand to the zoning officer in cases which must arise by "appeal" . . . or a continued hearing in other cases, to afford the opposition time to prepare its defense. **The obvious exception is the amendment designed to conform the application to the requirements of the ordinance**, as where an applicant who has been seeking three variances amends his plans to eliminate the need for one.

*In re Arnold*, 984 A.2d at 9 (quoting Robert S. Ryan, *Pennsylvania Zoning Law and Practice* § 9.4.11 (1970)) (emphasis added). Because Walmart withdrew its plans to construct a gas station, and "[b]oth the [b]oard and [trial court] [] noted that the absence of issues surrounding underground storage tanks at the gas station brought the site plan into compliance with the [z]oning [o]rdinance[,]" this Court concluded that Walmart properly amended its application without a hearing. *Id*. at 9-10.

Here, Appellant amended the Second Application shortly before the Second Application Hearing, which took place on December 9, 2021, with the last version of the Amended Second Application being submitted on December 7, 2021. Common pleas explained that this was just a few days before the hearing, so it was not an abuse of discretion for the Board to not consider the alternative because there was not adequate time to prepare. (Common pleas' Op. at 4.) In addition, common pleas stated it would have required the Board to essentially consider two separate applications simultaneously, and "discussion on the alternative was limited to a brief statement by Appellant[] stating the alternative plan would meet the recreational area

20

quota, without much, if any, discussion of the potential risks of such an alternative." (*Id.* at 4-5.) We need not resolve whether it was proper for Appellant to amend the Second Application just days before the scheduled hearing, however, because even if the Amended Second Application was properly before the Board and should have been considered by it, Appellant did not meet her burden of establishing the proposal satisfied the Ordinance's requirements.

The case of *McGinty v. Zoning Board of Adjustment of City of Pittsburgh*, 717 A.2d 34 (Pa. Cmwlth. 1998), is instructive. In that case, a deli company applied for a special exception to expand its restaurant. The special exception would relieve the deli company from providing additional parking spaces. To be granted the special exception, the deli company had "the initial burden of establishing that the modification to the parking requirement [wa]s necessary in order to appropriately develop the subject parcel of land because of the land's unique geographical or topographical conditions, or because of its size, shape, or dimensions." *Id*. at 37. The zoning board granted the deli company a special exception, and the objectors appealed arguing that the deli company "failed to establish existence of some unique characteristic of the subject property by **substantial competent evidence** to warrant a special exception." *Id*. at 36 (emphasis added). The trial court affirmed; however, this Court reversed. After reciting the burden-shifting framework for special exceptions and conditional uses, the Court explained that it did not "find [any] **testimony** . . . specifically addressing the unique characteristics of [the deli company's] land as a detriment to appropriate development." *Id*. at 37. The Court further explained that the deli company "erroneously focuse[d] on the availability of public parking" and the only reference to the applicable zoning ordinance "in the transcript" from the hearing was from the deli company's "representative concerning

21

his survey of the available public parking in the area." *Id*. The Court also rejected the deli company's argument that the zoning board did not have to render any findings of fact about the land's unique characteristics because the board could simply look at "where and how the property in question is situated" and "could take judicial notice that the parcel has 'prima facie exceptional geographical characteristics.'" *Id*. (internal quotation marks omitted). This Court explained that the deli company had the burden of persuasion regarding the land's unique characteristics. If the deli company met this burden, it is only then that the zoning board could fulfill its duty to issue well-reasoned determinations based on substantial evidence of record. When the board granted the deli company a special exception without rendering any findings of fact relevant to the land's unique characteristics, as that was a required criterion under the applicable ordinance, it abused its discretion. *Id*. at 37-38.

Similarly, here, there was **hardly any testimony** from Mr. Elnitski, on behalf of Appellant, relative to **how the Amended Second Application's alternative acreage plan met the criteria of the Ordinance in order to be properly considered as requisite recreational area**. Mr. Elnitski rather focused his testimony on the **original** Second Application's acreage plan, which included the land at the individual RV spots, and that plan was rejected as a proper method of calculation by the Board. (*See* Second Application Hr'g Tr. at 14-21.) While Appellant appealed that determination initially to common pleas, which agreed with the Board's interpretation of the Ordinance, Appellant has not challenged that finding further. Instead, Appellant has focused solely on the alternative acreage plan proposed in the Amended Second Application. However, in relation to that specific proposal, Mr. Elnitski simply testified that it met the requirements of the Ordinance

22

and posited that the specifics of the plan would be "hash[ed] . . . out" further along in the development process instead of explaining the alternative plan to the Board at that time. (*See id*. at 15.) Unlike Walmart in the case of *In re Arnold*, Appellant did not withdraw the Second Application when she submitted the Amended Second Application. Rather, Appellant proposed **two plans** to the Board—the Second Application and the Amended Second Application—and expected the Board to choose which plan better fit the criteria of the Ordinance. Appellant cannot make the Board rely on submission of the Amended Second Application alone, rely on a bare assertion that Appellant met the recreational area requirement, or choose which of two plans better fits the requirements of the Ordinance. *McGinty*, 717 A.2d at 36. Although Appellant claims that the Board could have asked more questions about the alternative acreage plan or continued the hearing, it is **Appellant's burden** to present the Board with "substantial competent evidence" that the proposed plan meets the Ordinance's requirements. *Id*. Without this competent and substantial evidence, the Board cannot fulfill its duty to make well-reasoned determinations relative to the Second Amended Application's alternative acreage plan,[16] let alone be responsible for choosing that plan. The Board "is not an advocate in these matters and therefore ha[s] no duty to present evidence on the criteria which [A]ppellant ha[s] the duty to support." *Rubin*, 274 A.2d at 210. Therefore, Appellant did not present the Board with substantial, competent evidence at the Second Application Hearing demonstrating how the Amended Second Application met the criteria of the

---

[16] Appellant appears to argue that because the areas labeled as alternative recreational areas on the Second Amended Application when added together exceed six acres, Appellant necessarily meets the Ordinance's requirements. However, this view is too simplistic and does not account for other provisions of the Ordinance that may impact whether that land is suitable for that purpose or other factors and considerations that the Board, as factfinder, needs to evaluate before concluding the proposed acreage could be properly included in the calculation.

Ordinance, and, thus, the Board could not render well-reasoned determinations relative to the Amended Second Application's alternative plan, and it did not err.

Because Appellant did not meet her burden, the burden never shifted to objectors to show "that the proposed [conditional use] would be detrimental to the public health, safety[,] and welfare." *Sheetz*, 804 A.2d at 115. Thus, we need not address the remainder of Appellant's arguments.[17]

## IV.   CONCLUSION

In sum, the Board did not err in not considering the alternative plan in the Amended Second Application because Appellant did not meet her burden in establishing the alternative acreage met the objective requirements of the Ordinance. Accordingly, we affirm.

_____

**RENÉE COHN JUBELIRER,** President Judge

---

[17] We note that even if we reached Appellant's arguments regarding the sufficiency of the evidence, the Board had substantial evidence to support its findings that there were safety concerns. Namely, regarding the safety concerns about the RV park's proximity to the Bellefonte Airport, a representative from the Pennsylvania Department of Transportation, Bureau of Aviation, voiced "significant" concerns about having a campground/RV park adjacent to the Bellefonte Airport at the First Application hearings. (*See* First Decision, FOF ¶¶ 31-34, 47.) Also, a member of the community submitted an Air Safety Institute Report that documented accidents occurring during flight instruction and photos of an incident at the Bellefonte Airport where a plane went off the runway in November 2020. (August 2, 2021 First Application Hr'g Tr. at 119; First Decision, Exs. K-L.)

The Board's Second Decision also highlighted the public's testimony establishing that the location, nature, and intensity of the proposed RV park will not be in harmony with the surrounding area, which are requirements under Section 21.14(A)-(B) of the Ordinance. *See* Ordinance § 21.14(A)-(B). Appellant did not challenge the Board's findings on this basis, nor was this issue addressed by common pleas. Thus, it remains an additional, valid reason for denying the Second Application.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marina Elnitski, Maison Lodging, : \
LLC and Doug Colkitt : \
  : \
  : \
v. : No. 762 C.D. 2023 \
  : \
Benner Township Board of : \
Supervisors : \
  : \
  : \
v. : \
  : \
Jared L. Evey and Kathy E. Evey : \
  : \
Appeal of:  Marina Elnitski : \

# **O R D E R**

**NOW**, July 9, 2024, the Order of the Court of Common Pleas of Centre County, entered on June 14, 2023, is **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** President Judge